UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

DOCKET: 1-19-cv-00200-JJM-PAS

RICHARD FERREIRA (Ferreira)
Plaintiff, Pro se

v.

TOWN OF LINCOLN (TOL); LINCOLN POLICE
DEPARTMENT (LPD); CHIEF OF POLICE (LPD);
CAPTAIN PHILLIP GOULD (Gould); DETECTIVE
SEAN GORMAN (Gorman); THE RHODE ISLAND
STATE POLICE (RISP); JAMES MANNI (Manni);
RHODE ISLAND STATE POLICE DETECTIVE
LIEUTENANT GRASSEL (Grassel); RHODE
ISLAND STATE POLICE DETECTIVE SERGEANT
DEMARCO (Sgt. Demarco): RHODE ISLAND
STATE POLICE CORPORAL SCOT BARUTI
(Baruti); RHODE ISLAND STATE POLICE
TROOPER HIRSCH (Hirsch); RHODE ISLAND
STATE POLICE TROOPER GRASSO (Grasso)
Defendants

Suit Brought Against All Defendants
(Defts) In Their Individual Capacities
As Rhode Island State Employees Acting
Under Color Of State Law

)
) 1-Count Of Tort:
)    Negligence Action:
)    Failed/Refused To
)    Comply With Rhode
)    Island/U.S. Law Of
)    Forfeiture Proceedings
)    Breach Of Duty Owed
)    By Failing To Return
)    $67,000.oo In Cash To
)    The Plaintiff (Plt).
)
) 1-Count Of Tort:
)    Negligence Action
)    Claim Of Financial
)    Interference As Defts
)    Refuse To Return The
)    $67,000.oo So The Plt
)    May Invest It.
)
) 1-Count Of Violating The
)    Laws Of Rhode Island
)    And The United States;
)    And Constitution Of The
)    United States.

  2-Counts Of Tort:
     Conversion Of Property;
     Conversion Of $67,000.oo
     Taken By Defts From
     Inside Vehicle/SUV

SECOND AMENDED COMPLAINT AUTHORIZED BY THE COURT

CIVIL ACTION IN THE NATURE OF A CIVIL RIGHTS ACTION,
42 USCS, §1981-1988, SEEKING DECLARATORY JUDGMENT; MONETARY
DAMAGES; RETURN OF PERSONAL PROPERTY, AND CASH IN THE AMOUNT
OF $67,000.00 TAKEN BY DEFT'S WITH INTEREST ON THE MONEY SINCE
APRIL 29, 2016; DEMAND FOR JURY TRIAL ON ALL ISSUE'S

## JURISDICTION

1. That, the jurisdiction of this United States District Court,
   (USDC), is invoked pursuant to the laws of Rhode Island,
   inclusive of Rhode Island General Law, (RIGL), §21-28-5.04.1
   (2016), governing forfeiture of personal property used in
   criminal enterprise; the laws of the United States, inclusive
   of 28 USCS, §§1332(a)(1)(c)(1)(d)(3)(A); §§1367; §§1391; §§
   2201-2201; 42 USCS, §§1981-1988; The Constitution of the United
   States; The Policies, Rules, and Regulations of the LPD; The
   Policies, Rules and Regulations of the RISP; The Federal Rules
   of Civil procedure, (FRCP); All parties are citizens of the
   United States except for TOL, LPD, and RISP, which are either
   law enforcement, or municipal entities, which create Policy
   that all defts have violated; or profited from; disperse
   and or implement. All parties are citizens of the State of
   Rhode Island, (RI), except TOL, LPD and RISP, which are law
   enforcement, or municipal entities; and Ferreira, who is a
   citizen of Massachusetts leading to this suit in diversity.
   This suit is filed into the RI-USDC because the court ordered
   warranted - seizure of the Mercedes SUV belonging to Ferreira,
   along with personal effects, and cash in the amount of
   $67,000.00, was taken by the named Defts on April 29, 2016.

### THE PLAINTIFF SO ALLEGES THE FOLLOWING:

### PRELIMINARY STATEMENT OF THE CASE

2.  That, this is a five count action on behalf of the Plt, who
    while renting a room in a hotel in Lincon, RI, answered his
    hotel room door, and was shot twice, by men claiming to be
    hotel employees. During the search of the hotel room, LPD/RISP,
    recovered a small recreational amount of Heroin, which they
    automatically attributed to the Plt, see attached **EXHIBIT-A**.
    Shortly thereafter, LPD/RISP seized the Mercedes SUV which
    was owned by the Plt, and parked in the hotel parking lot,
    with  a   warrant, which was never served on the Plt; and
    also seized all personal effects, and $67,000.00, in cash.
    The Plt, had traveled with a female friend to Casino's in
    Connecticut, and RI, prior to staying at the hotel, and had
    legitimately earned the money in his SUV.

3.  That, the Plt, was arrested for the Heroin, which was later
    dismissed, when it was discovered that the small recreational
    amount of Heroin, belonged to the female friend of the Plt.

4.  That, after the charges were dismissed, the Plt retrieved his
    Mercedes SUV, from the LPD/RISP Vehicle Impound Lot, and
    discovered that the LPD/RISP, had taken all of his personal
    effects from the SUV, along with the $67,000.00 in cash.

5.  That, recently, since the SUV was seized on April 29, 2016,
    as of 2020:

    (A). all LPD/RISP Report on these events, listed the SUV
    as being seized/taken/converted by the LPD/RISP, with the

personal effects, and $25,996.oo, in cash: a Report has cited the SUV; -- which entity took it, (i.e. the RISP);

(B). at no time since April 29, 2016, have the LPD, and/or RISP, given the Plt a receipt for the SUV, personal effects, or the $25,996.oo in cash, that was recently recovered;

(C). at no time since April 29, 2016, have the LPD, and/or RISP, given the Plt any type of Inventory Slip for the contents of the SUV, when the LPD/RISP, seized/converted the SUV, into their unlawful possession;

(D). at no time since April 29, 2016, have the LPD, and/or RISP, any type of NOTICE, that the personal effects, and $67,000.00, which was inside the SUV, when the LPD/RISP, seized/converted the SUV, were being forfeited under RIGL §21-28-5.04.1 (2016), or federal drug forfeiture laws at 21 USCS, §§853(a); 881(d), and/or, 19 USCS, §§1615;

(E). any possible criminal investigation concerning the personal effects, and $67,000.00, in cash from the inside of the SUV, cannot continue indefinitely, and cannot continue without minimal due process being afforded the Plt;

(F). at no time since April 29, 2016, has the LPD, or the RISP, been forthcoming, and admitted, that they had seized/ converted the SUV, personal effects and $67,000.00, stored within the SUV, and have actually misled the Plt, in his attempts to recover his personal effects and $67,000.00 in cash;

(G). at no time since April 29, 2016, have the LPD, or the RISP, admitted to the Plt, that they are in a conflict of interest in regards to the $67,000.00, which could be seized

and forfeited as drug proceeds, if, the LPD/RISP, can prove
the $67,000.00, was illegal drug profits: why should the LPD/
RISP, admit they illegally seized/converted/took the $67,000.00,
when the LPD/RISP, are trying to become the recipients of that
money, or the $25,996.oo, the RISP claims was in the SUV;

(H). at no time since April 29, 2016, have the LPD, and/
or the RISP, charged the Plt with any crimes that would justify
the ongoing seizure/conversion/theft, of the $67,000.00.

## PARTIES

6.  That, the Plt is and was at all times herein, the owner of the
Mercedes SUV, which was returned to him, without personal
effects, and the $67,000.00 in cash, and was injured by the
Defts as alleged. The current address for the Plt is P.O. Box
8000, Shirley, MA. 01464.

7.  That, the Deft TOL, is and was at all times herein, the municipal
entity which failed to train, supervise, fund, create policy,
for all law enforcement officers/employees of the LPD, to the
injury/detriment of the Plt, with a business office of TOL,
100 Old River Road, Lincoln, RI, 02865.

8.  That, the Deft LPD, is and was at all times herein, the law
enforcement entity for the TOL, which failed to train, supervise,
fund/create policy for all law enforcement officers/employees
of the LPD, to the injury/detriment of the Plt, with a business
office of LPD, 100 Old River Road, Lincoln, RI, 02865.

9. That, the Deft LPD Chief of Police, (COP), is and was at all
times herein, the senior supervisor for the LPD, who failed/
refused to train, supervise, fund, create policy, or suggest
policy changes, in relation to the seizure of vehicles by the
LPD, that would include providing an inventory of the vehicle;
receipt for any vehicle seized/taken by LPD; notice of any
forfeiture hearing on the vehicle; a specified period of time
the vehicle, and its contents, can be held, prior to a
mandatory return to the owner; all of which have injured the
Plt. The LPD-COP has a business office at LPD, 100 Old River
Road, Lincoln, RI, 02865. COP is identified as Chief Sullivan.

10. That, the Deft's COP, Chief Sullivan; LPD Captain Phillip Gould;
and LPD Detective Sean Gorman, were previously served SUMMONS,
are, and or were, LPD Officers employed by the TOL/LPD, and
listed as such in Exhibit-A, with direct ties to this case,
on site the evening of April 29, 2016, when the SUV belonging
to the Plt, was seized/converted/taken, with personel effects
and $67,000.00, in cash, and are collectively known forthwith,
as LPD Officers:

(A). who failed/refused to follow the LPD Policies,
Rules and Regulations, to the injury/detriment of the Plt;

(B). who were improperly trained, funded, supervised in
LPD Policies, Rules, and Regulations by the TOL, LPD-COP, to
the injury/detriment of the Plt;

(C). who illegally seized/converted/stole outright,
personel effects, and $67,000.00, from the SUV owned by the

Plt, to the injury/detriment of the Plt;

    (D). the LPD Officers have a common business address of LPD, 100 Old River Road, Lincoln, RI, 02865.

11. That, the Deft RISP, is and was at all times herein, the law enforcement entity which failed to train, supervise, fund, create policy, for all RISP Officers, to the detriment/injury of Plt, which should have included at a bare minimum:

    (A). notice to the vehicle owner, that their vehicle was seized, by RISP, and not stolen off the street;

    (B). why the vehicle was seized, to the vehicle owner;

    (C). when the vehicle was seized, to the vehicle owner;

    (D). where the vehicle was seized from - what location, to the vehicle owner;

    (E). inventory of the contents of the vehicle, to the vehicle owner;

    (F). receipt to the owner of the vehicle, for the vehicle;

    (G). expected period of time the vehicle will remain in the possession of the RISP; or if forfeiture will occur;

    (H). Deft RISP has a business address of: Scituate Barracks, 311 Danielson Pike, North Scituate, R.I., 02857.

12. That, the Deft Manni, RISP Superintendent, is the RISP predecessor, herein, in charge of the RISP, at the time of this Civil Action, the senior supervisor for the RISP, who failed/refused to train, supervise, and/or create policy, or suggest policy changes in relation to the seizure of vehicles, which should have included at a bare minimum return of the $67,000.oo, and:

```
(A). repeat allegation above at ¶¶11(A);
(B). repeat allegation above at ¶¶11(B);
(C). repeat allegation above at ¶¶11(C);
(D). repeat allegation above at ¶¶11(D);
(E). repeat allegation above at ¶¶11(E);
(F). repeat allegation above at ¶¶11(F);
(G). repeat allegation above at ¶¶11(G);
(H). repeat allegation above at ¶¶11(H).
```

13. That, the Deft's Grassel, Sgt. Demarco, Baruti, Hirsch and

Grasso, are, and were the RISP Officers employed and involved,

on April 29, 2016, in the actual investigation, and seizure of

of the SUV, where the Plt, had $67,000.oo stored within, which

the Deft's seized/converted/stole, contrary to law, along with

other personal effects of the Plt, and who are known forthwith

as the RISP Officers, (cited with paperwork at Exhibit-A):

    (A). who failed/refused to follow RISP policies, rules

and regulations, to the injury/detriment of the Plt;

    (B). who were so improperly trained, funded, supervised in

RISP policy/rules/regulations, that these Defts, with Manni, did in

2019, notify Attorney John Cicilline, see attached EXHIBIT-B,

thru the Rhode Island Attorney General, (RIAG), that no money was

seized from the SUV or the Plt;

    (C). who were so poorly trained, funded, supervised in

RISP policy/rules/regulations, that these Defts then located

$25,996.oo (from the $67,000.oo), and refused to return it to the

Plt, creating additional financial interference/Tort; who have a

common business address cited above at ¶¶11(H).

14. That, any, and all combinations of the Deft's in any, and all

forms/manners, did intentionally, conspire to seize/convert/

steal the personal effects, and $67,000.00, in cash from the
SUV belonging to the Plt, to the injury/detriment of the Plt.

15. That, all Defts knew, or should have known their conduct was
criminal, or that it would violate the civil rights of the
Plt, as they have access to TOL lawyers, and RSIP lawyers, and:

(A). they were law enforcement officers trained in the
law, and charged with its enforcement;

(B). they are Policy Makers either as municipal or
law enforcement entities; know the law; have been sued before;

(C). no criminal investigation should have taken the past
48 months to conduct, considering the comment in the news
from Deft Captain Philip Gould, who is quoted at EXHIBIT-C,
as stating:

> "...This does not appear to be a random act,
> Capt. Philip Gould of the Lincoln Police
> Department said. The suspect and victim
> apparently did know each other. There is no
> reason to believe there is any danger here
> on the scene...";

(D). if the Plt and the men that shot him knew each
other, then tracking down the shooters of the Plt, should have
occurred immediately after the shooting, or within the first
12 months after the shooting: the failure to find the shooters
is consistent with the Defts actual knowledge of the seizure/
conversion/theft of the personal effects and $67,000.00,
taken from the SUV belonging to the Plt, and failing/refusing
to find the shooters, for fear that the shooters may also have
knowledge that the Plt had $67,000.00 in his SUV.

10

## FACTS

16. That, the Plt by reference herein incorporates the above ¶¶ 1-15, as facts in support of this Civil Action.

17. That, on April 29, 2016, the SUV belonging to the Plt was towed from the Hotel where he was shot by two hotel employees, see Exhibit-C:

> "...A vehicle, with Massachusetts plates, was towed from the scene earlier in the day. Police have not yet said what, if anything, it may have to do with the investigation..."

18. That, since the SUV is/was listed in any LPD/RISP Report as being seized and towed away; and was taken and secured in a LPD/RISP Vehicle Impound Lot where the Plt retrieved it, an inference can be drawn, that the reason the SUV was Reported by the LPD/RISP, as being seized/towed, was to reduce the witnesses that would connect it to the LPD/RISP, and make it easier for the LPD/RISP Defts to seize/convert/ steal the personal effects, and the $67,000.00, in cash, from inside the SUV, after it was seized/towed away.

19. That, on March 6, 2019, after being given the run-around about the return of the $67,000.00, by the LPD, the Plt filed a Letter Of Intent, (LOI), to bring suit to recover the money, and served it on both the TOL, and LPD, see attached LOI, at EXHIBIT-D.

20. That, on April 3, 2019, the Plt received the attached letter at EXHIBIT-E, from Ms. Melinda Baldinelli, which stated at relevant parts:

> "...Claim No. 111799-PP-01. Dated of loss: 4/29/16.
> Insured Member: Town of Lincoln. I also obtained
> and reviewed the police reports from the Lincoln
> Police Department regarding the incident...Based
> on my investigation, the involvement of the
> Lincoln Police Department was the initial arrival
> to the hotel for a shooting, to secure the scene,
> and interview witnesses. It appears that once the
> Rhode Island State Police arrived, they took over
> the investigation. The Lincoln Police Department
> never had possession of the Mercedes, therefore
> never in possession of the money in question. At
> this time, I have no alternative but to deny your
> claim for damages..."

21. That, since the LPD secured the crime scene, according to the

LOI Response at Exhibit-D, the following facts can be inferred:

(A). the scene obviously involved the Mercedes SUV, as

it was seized/towed away, which would involve the LPD Officers;

(B). if the scene did not include the SUV, then there

should have been no reason to seize/tow it away, unless LPD/

RISP Officers needed to remove the SUV from the witnesses that

gathered after the shooting had occurred, in order to seize/

convert/steal the $67,000.00, in cash, from the SUV, without

being seen;

(C). the LOI Response at Exhibit-D, is incomplete, or

was arrived at without all the LPD Reports, as Exhibit-D, does

not mention that an officer from the LPD was assigned to the

hotel while the investigation continued as set out in Exhibit-C:

> "...Lincoln police have an officer on detail inside
> the hotel as the investigation continues..."

22. That, an inference can also be drawn that the LPD/RISP seized/

converted/stole the $67,000.00, from the SUV belonging to the

Plt, as they:

(A). omitted the amount of $67,000.oo, from all their Reports;

(B). failed/refused to tell the media why the vehicle was being seized and towed as set out above at ¶¶17;

(C). the LPD/RISP were the last people seen with the SUV prior to the return of that vehicle to the plt, without the $67,000.00;

(D). the LPD/RISP impounded the SUV in the LPD/RISP impound lot without inventorying the vehicle;

(E). returned the SUV to the Plt, indicating that it had nothing to do with the shooting, but failed/refused to return the personal effects and the $67,000.00, in cash inside the SUV;

(F). Deft Captain Gould was on the crime scene, as verified by Exhibit-C, see above at ¶¶15(C), with an LPD Captain on the scene, the only way the personal effects and $67,000.00, in cash, stored in the SUV, could disappear, is with the knowledge of the LPD/RISP.

23. That, the Plt has read the legal standard for negligence in RI, and understands it to be:

> "...Rhode Islands formulation of the negligence standard is familiar: a plaintiff must establish a legally cognizable duty owed by a defendant to a plaintiff, breach of duty, proximate causation between the conduct and the resulting injury, and the actual loss or damage..." Wiggins v. Rhode Island, 326 F.Supp.2d 297, 311 (2004).

24. That, the Plt alleges that the Defts owed him the following legally cognizable duty, which the Defts breached, resulting in the proximate causation of the injury to the Plt, and the

actual loss of personal effects, and $67,000.00:

(A). 4th Amendment requires a warrant to search/seize, which Defts initially had, but retained property/money absent conviction;

(B). 14th Amendment due process requirements of a hearing of some description, prior to the loss of property, and money in this case, which the Defts failed/refused to provide; see above ¶¶11(A) to 11(G); cf below: ¶¶32(K)(L)(M);

(C). RIGL, §§21-28-5.04.1, and/or 21 USCS, §§853(a); 881(d), and/or 19 USCS, §§1615: forfeiture of the $67,000.00, in cash cannot occur, without a hearing.

25. That, another inference which can be drawn in this case, is that the LPD/RISP, did seize/convert/steal, the $67,000.00, and that can be seen by the failure/refusal of the LPD/RISP, to investigate the missing $67,000.00, and who took it.

26. That, the LPD/RISP, never investigated the $67,000.00, as being profits from gambling in Connecticut and Rhode Island, so the LPD/RISP, could treat the money as illegally obtained drug profits, and thereby seize it.

27. That, each Deft individually, or in conspiracy with another, or several others, seized/converted/stole the $67,000.00.

28. That, all Defts had a duty to secure, inventory, provide a receipt to the Plt for the $67,000.00, which the Defts failed/ refused to do; and/or return the money when it was recovered/found.

29. That, Exhibit-E, in fact, found that the RISP had seized the $67,000.00, from the SUV belonging to the Plt.

30. That, the author of the Exhibit-E document, would be in a good position to state whether or not the RISP did seize the SUV, and the $67,000.00.

31. That, the fact that the SUV was returned to the Plt, would infer, that the Plt had done nothing wrong or illegal.

32. That, the seizure/conversion/theft of the $67,000.00, did:

(A). interfer with the financial ability of the Plt to reinvest that money as he saw fit legally;

(B). reduce the standard of living that the Plt was forced to endure; making his life harder financially; creating financial problems for the Plt;

(C). require the Plt to come to court to get his money back, and forcing the Plt to spent additional money to bring, and litigate this action;

(D). interfere with the ability and right of the Plt, pursuant to Article 1, §§8 and 10, of the U.S. Constitution, to engage in commerce between the states of Massachusetts, Connecticut, and Rhode Island; Financial Interference TORT;

(E). deny the right of the Plt, pursuant to the Privileges and Immunities Clause, Article IV, §2, of the U.S. Constitution, when the Plt could not travel from Massachusetts, into Connecicut, and Rhode Island, without being shot, then having the Defts from Rhode Island, seize/convert/steal his $67,000.00;

(F). violate the 1st Amendment right of expression, when the Plt lacked the financial ability to express himself thru

the purchase of items that reflected his political, religious,
and sexual views, using the $67,000.oo, or $25,996.oo;

(G). violate the 1st Amendment right to association, when
the Plt lacked the finanical ability to socialize with other
people, and spend his money as he saw fit within the limits
of the law; violation compounded by refusal to return $25,996.oo;

(H). violate the 4th Amendment right against unlawful
search and seizure, when the Defts seized/converted/stole the
$67,000.00, and personal effects, (i.e., personal papers,
clothing, etc), from the SUV; Refused to return-recovered $25,996.oo;

(I). violate the 5th Amendment right to due process,
and right to be heard, prior to, the total forfeiture of life,
liberty, or property, (i.e., personal effects, and $67,000.00,
stored inside the SUV); Current refusal to return $25,996.oo;

(J). violate the 8th Amendment right to be free from
cruel and unusual punishment, when the Defts seized/converted/
stole the personal effects and $67,000.00, out of the SUV
owned by the Plt, forcing the Plt into a mental anguish
nightmare of litigation, just in order to have his personal
effects, and $67,000.00, returned to him; inclusive of $25,996.oo;

(K). violate the 14th Amendment procedural Due Process,
see contents herein, inclusive of ¶¶1; 5(A)-5(H); 11(A)-11(G),
prior to stripping the SUV, and contents of the SUV, (i.e.,
personal effects and $67,000.00, in cash), from the Plt;

(L). violate the 14th Amendment Substantial Due Process,

to be free from arbitrary government action, even if it is a legal action, when the Defts engaged in the course of conduct alleged herein, cf above ¶¶11(A)-11(G);

(M). violate the 14th Amendment Equal Protection Clause, when the Defts repeatedly, freely, intentionally, and with knowing attitude, denied Plt the equal protection of the laws set out herein, inclusive of ¶¶1; 5(D); ¶¶22(A)(B)(C).

33. That, the acts and omissions of the Defts cited and alleged herein are the direct proximate cause of the injuries suffered by the Plt as set out; compounded by refusal to return $25,996.oo.

34. That, the only people involved in this case, at this time, based on the Reports at Exhibit-A, are the Defts.

35. That, only the Defts are in the position to have engaged in the alleged acts and omissions set out herein.

36. That, the named Defts did physically, and finanically cause the injuries to the Plt: compounded by refusal to return $25,996.oo.

37. That, the Defts TOL, and RISP, created a Policy in writing, or by custom, and/or practice that:

(A). failed to train/supervise/fund all subordinate LPD-RISP Officers-Defts, in seizure/asset forfeiture;

(B). failed to train/supervise all LPD and RISP Officers -Defts, in the proper course of action, in this case;

(C). failed to adhere/dispense the legal authorities cited herein inclusive of those at ¶¶1; 5(D); 32(D)-32(M)

repeatedly, to the injury/detriment of the Plt;

(D). misled the Plt when the Plt attempted to learn the status of the missing personal effects and $67,000.00, seized/converted/stolen from inside the SUV, after, the Defts took the SUV; failed to fire unfit/incompetent LPD/RISP Officers.

38. That, the named Defendants cited herein above, within this Second Amended Complaint, are genuine RISP employees/officers, who are necessary for the proper and just adjudication of this action against all of the other named Defts, who may be innocent of the claims against them in this case.

39. That, the Plt was owed a duty to discharge/fire unfit and incompetent employees, which the Defts failed to do leading to the seizure/conversion/theft of personal effects, and $67,000.00, stored inside the SUV; and return-recovered $25,996.oo.

40. That, the law was established by 1994, that mandated a duty to discharge/fire unfit and incompetent employees, which the Plt read in:

> "...an employer has a continuing duty to retain in its service only those employees who are fit and competent..." (At relevant parts): Favorito v. Pannell, 27 F3d 716, 719 (USDC Rhode Island, 1st Cir. 1994).

41. That, the employers in this case are Defts TOL, LPD-COP, and RISP, RISP Commanding Officer.

42. That, the LPD and RISP Officers named as Defts cannot be fit, nor competent, since they:

(A). excluded all mention of the $67,000.oo, in the SUV,

the true motive which has helped to conceal, the purpose of the seizure/towing of the SUV away from any non-law enforcement witnesses: SUV could only be towed away by permission of LPD-RISP;

(B). seized the SUV, with, or without a warrant, and failed to secure the contents of the SUV (i.e., personal effects and $67,000.00);

(C). failed/refused to seize the SUV in accordance with minimal due process set out above at ¶¶11(A)-11(H); or pursuant to the legal authorities set out above at ¶¶1;

(D). illegally seized/converted/stole $67,000.00;

(E). have engaged in a conspiracy among themselves, or two, or more Defts have conspired to steal the personal effects, $67,000.oo initially, and $25,996.oo, recently from the Plt.

43. That, the failure/refusal of the employers listed above at ¶¶41, to fire the unfit/incompetent Defts above at ¶¶42, may be inferred and mean that the employers are involved in the conspiracy themselves in some way, shape, or form, and firing subordinate Defts, could result in the subordinate Defts, naming the employers, as being part of the larger, overall conspiracy.

44. That, the employers/municipalities of the TOL and RISP, did:

(A). create the Policy above at ¶¶8; 9; 11(A)-11(G); 24(A)-24(C); 32(A)-32(M); 37; which is contrary, and in violation of the U.S. Constitution;

(B). create a policy that led to the specific conspiracy of seizing/converting/stealing the personal effects, and the $67,000.00 from the SUV, after the LPD-RISP, had the SUV towed

19

away from the sight of any witnesses, in the hotel parking lot;

(C). suppress, deny, and interfere with any information about whether LPD/RISP Officer Defts had been trained to return the SUV; cash money; seized with or without a warrant;

(D). suppress, deny, and interfere with any information about whether LPD, or RISP, or Officers-Defts from both LPD and RISP, searched the SUV before, or after, it was towed;

(E). suppress, deny, and interfere with any information about the name of the Towing Service, used to tow the SUV from the hotel parking lot, to the police impound lot;

(F). suppress, deny, and interfere with any information about who seized the personal effects, and $67,000.00, out of the SUV, was it the LPD, the RISP, or both.

45. That, the Plt has read:

> "...Liability will only attach for a municipality when its failure to train amounts to deliberate indifference to the rights of the persons to whom the police come into contact...a municipality's failure to train must reflect a deliberate or conscious choice by the municipality -- a policy defined by our prior cases -- to be liable for such failure under §1983...moreover, there must be a casual link between the muniicpality's action (or inaction) and the alleged constitutional deprivation..." Ousley v. Town Of Lincoln, 313 F.Supp.2d 78, 84 (USDC, RI 2004).

46. That, a municipal Policy of failing/refusing to adequately fund the training, and/or operations of the police is actionable, more so now, than when the First Amended Complaint was served on all Defendants, because Deft Gorman told the Plt the RISP got the money, leading to the recovery of $25,996.oo, of the $67,000.oo, which the Deft's refuse to return to the Plt, currently.

47. That, the TOL, failed/refused pursuant to TOL Policy, to
adequately fund the LPD, which:

(A). reduced the professional level of training and
supervision of the LPD Officers-Defts, leading to the situation
alleged above at ¶¶14-15(A)(B)(C)(D);

(B). leading to LPD Officers-Defts not being trained to
understand what should be seized, and what should be secured;

(C). did lead to the basic fundementals of police work
not being trained into the LPD Officers-Defts, and then to
ensure that training was followed thru proper supervision.

48. That, the RISP, failed/refused pursuant to RISP Policy, to
adequately fund the RISP, which:

(A). reduced the professional level of training and
supervision of the RISP Officers-Defts, leading to the situation
alleged above at ¶¶14-15(A)(B)(C)(D);

(B). leading to LPD Officers-Defts not being trained to
understand what should be seized, and what should be secured;

(C). did lead to the basic fundementals of police work
not being trained into the RISP Officers-Defts, and then  to
ensure that training was followed thru proper supervision.

49. That, the Plt read, and understands that as of 2017, the law
in Rhode Island allowed for two different types of conversion
of property, pursuant to Reed v. Zak, 573 BR 13, 42 (USDC RI
2017), which stated at relevant parts:

> "...Conversion does not require an intent to
> deprive the owner permanently of the property,

> ...rather, one need intend to exercise dominion
> or control over the property of another and
> can be held liable for conversion even if the
> property over which he exercised control was
> believed to be his own...There may be a conversion
> which is innocent or technical, an unauthorized
> assumption of dominion without willfulness or
> malice. There may be an honest but mistaken
> belief, engendered in the course of dealing,
> that powers have been enlarged or capacities
> removed. In these and like cases, what is done
> is a tort, but not a willful and malicious
> one..." Reed v. Zak, page 42.

50. That, the Plt alleges two different types of Tort Conversion
of his property occurred by the named Defts.

51. That, the Plt alleges:

(A). first, Tort Conversion of Property, (i.e., personal
effects, and $67,000.00), stored in the SUV, was seized,
converted/stolen, with willful and malicious intent that
is demonstrated herein, inclusive of engaging in the conduct
described at ¶¶2-5; 7(failed to fund/train/supervise subordinate
LPD-RISP Off-Defts), 10(A)(B)(C); 11-20; 24(A)(B)(C)-25; 27 to
37(A)-37(D); 40-48; and/or; refused to return-recovered $25,996.oo;

(B). second, Tort Conversion of Prperty, (i.e., personal
effects, and $67,000.00), stored in the SUV, was seized/
converted, thru an innocent act that involved technical
procedure of moving under the belief that the money was the
result of illegal drug sales, and Defts seized the money as
demonstrated herein, inclusive of engaging in the conduct
described at ¶¶2-5; 7(failed to fund/train/supervise subordinate
RISP-LPD Officers-Defts), 10(A)(B)(C); 11-20; 10(A)(B)(C)-20;
27 to 37(A)-37(D); 40-48.

52. That, the willful and malicious Tort of Conversion of property,
    (i.e., personal effects, and $67,000.00), stolen from the SUV,
    inclusive of recent recovery-refusal to return $25,996.oo, include:

    (A). seized/stole SUV owned by Plt from hotel parking lot;

    (B). seizure of SUV was without receipt for SUV;

    (C). seizure of SUV was without notice, or hearing;

    (D). seizure resulted in theft of personal effects, and
$67,000.00; and current refusal to return recovered $25,996.oo;

    (E). seizure was covered-up, concealed, by suppressing,
denying, interfering with information needed to recover the
property in the SUV that was converted; Cf: above ¶¶13(B)(C);

    (F). conversion was contrary to the law set out herein,
inclusive of that above at ¶¶5(E);

    (G). conversion was implemented, or effected by false
representation that included no criminal conviction, and:

        (1). conversion of property was undertaken for the
           purpose of law enforcement investigation;

        (2). a law enforcement investigation that failed/
           refused to provide a receipt, notice or
           hearing; Cf: above at ¶¶13(B)(C);

        (3). a law enforcement investigation that is still
           ongoing after 48 months, cf: above at ¶¶15(C)(D);

        (4). a law enforcement investigation that LPD and
           RISP Defts, have been silent on; offering no
           serious information, or return of the property.

53. That, the innocent, technical, reckless and negligent Tort of Conversion of property, (i.e., personal effects, and $67,000.00), seized and converted from inside the SUV, included:

   (A). reallege ¶¶52(G)(1)(2)(3)(4);

   (B). reallege ¶¶51(B).

54. That, the Tort of Negligence included:

   (A). reallege ¶¶23-26; ¶¶51(A);

   (B). LPD and RISP Defts are negligent due to lack of training, supervision, and funding, see herein, ¶¶7-8; 10(B); 11-12; 13(B); 37(A); 44(A) to 44(F);

   (C). LPD and RISP Defts are negligent, and performing sub-standard police work to the detriment and injury of the Plt, see herein ¶¶2 to 5(A)-5(H); 11(A)-11(G); 15(C)(D); 18-19 (A)(B)(C); 22(A)-22(F); 23 to 24(A)(B)(C); 32(A)-32(M); 40-48; 50-71.

   (D). the duty owed the Plt was violated in these paragrphs cited within this ¶¶24(A)(B)(C).

55. That, cited undeniable genuine material facts in this case that are in controversy, include at a bare minimum:

   (A). who secured the SUV, the LPD Defts, or the RISP Defts;

   (B). who found and seized the personal effects, and $67,000.00, that were inside the SUV;

   (C). where are the personal effects and $67,000.00, as of the date of this action; RISP found $25,996.oo: refuse to return;

   (D). is the funding of the LPD and RISP, reduced, and lower

on April 29, 2016, than it was previous to that date;

(E). is there an ongoing law enforcement investigation that would involve seizing the $67,000.00;

(F). Exhibit-E, above at ¶¶20, placed the blame for the seizure of the §67,000.00, on the RISP

(G). is there a conflict of interest in this case, see above ¶¶5(G);

(H). all Defts are operating under a conflict of interest, alleged above at ¶¶5(G);

(I). a conflict of interest would impair, compromise, or stop a valid, viable, and complete law enforcement investigation, see above ¶¶52(G)(1)(2)(3)(4), and delay any completion of outcome, see above ¶¶15(C)(D).

56. That, theft and conversion of property is not a discretionary act, or function, which the Defts, are authorized to do.

57. That, all named Defts have a vested, and conflicted interest in seizing/converting/stealing the $67,000.00, cf: above at ¶¶5(G); ¶¶13(B)(C);

58. That, Defts are not entitled to immunity in this case, based on the contents of this Civil Action, inclusive of the ongoing conflict of interest described above at ¶¶5(G), which is negating any valid, viable, or complete law enforcement investigation.

59. That, the ongoing conflict of interest, is evidence of a conspiracy to deny, steal, and defraud the Plt out of his $67,000.00, and personal effect seized inside the SUV.

60. That, it was foreseeable to the named Defts, that at a bare minimum, they would need to do the following, which they failed/refused to do:

    (A). get a warrant for the SUV;

    (B). provide an inventory of the property seized from the SUV;

    (C). provide a receipt to the Plt for the property seized from the SUV;

    (D). provide a hearing prior to the forfeiture of the property seized from inside the SUV;

    (E). no criminal investigation is indefinite, and at some point in time, criminal charges/forfeiture proceedings must occur or the property seized from inside the SUV, must be returned to the Plt;

    (F). return the property seized from inside the SUV, to the Plt, or a violation of the law, and civil rights of the Plt, would, and did occur; return the recovered $25,996.oo.

61. That, LPD/RISP procedures in this case were inadequate, and deliberately indifferent to the Plt, due in part, or in full, to a lack of funding, or underfunding of available monies to this case: consider that this case has been ongoing for 48 months.

62. That, an LPD Officer was detailed to be on site at the hotal after the Plt was shot, cf: above ¶¶21(C).

63. That, no LPD Officer was at the hotel prior to the Plt being shot, to keep the Plt from being shot.

64. That, the LPD underfunded the security of the hotel where the Plt was shot, and 48 months later, there have been no arrests.

65. That, the underfunding of the hotel security where the Plt was shot, led to the Plt being shot: TOL/LPD Negligence.

66. That, if the LPD could afford to detail an officer to the hotel after the Plt was shot there, it could have detailed an LPD Officer to the hotel prior to the shooting, and prevented the shooting, unless TOL/LPD were negligent.

67. That, the LPD knew, or should have known that the close proximity of the Twin River Casino, (TRC), to the hotel where the Plt was shot, made it necessary to detail an LPD Officer at the hotel around the clock to protect the customers in the hotel.

68. That, the Policy of failing to fund/underfunding the LPD, by the TOL, is deliberate indifference to the civil rights of the Plt, leading to the Plt being shot, and then having his property inside the SUV seized/converted/stolen, resulting in the LPD and TOL believing they could act with impunity.

69. That, injuries suffered by Plt inclusive of having his personal effects, and $67,000.00, seized/converted/stolen from his SUV, is a consequence of TOL failing/refusing to fund/underfunding, the LPD; which have failed for 48 months to solve his shooting.

70. That, the facts alleged herein, create a controversy between the parties, from which there is no legal remedy, requiring this USDC to intervene, declare the rights of all parties

named, and grant in full, or in part, the requested relief cited herein below.

71. That, the theories of causation of the Plts injuries of being shot, (above at ¶¶61-69), of having his personal effects, and $67,000.00, being seized/converted/stolen from within the SUV by the Defts, raise questions of fact to be decided by a trial jury.

## LEGAL CLAIMS

### LEGAL CLAIM #1:

72. That, the acts and omissions of the Defts cited herein above at ¶¶1-71, created a Tort Of Negligence Action resulting in the cited injuries to the Plt.

73. That, the Plt, by reference, incorporates ¶¶1-71, as part of this Legal Claim #1, and states, the Defts:

(A). refused/violated the RIGL §21-28-5.04.1, of the RI Forfeiture law; No probable cause exists now, to retain money;

(B). refused/violated the Federal Forfeiture Laws at 21 USCS, §§853(a), and 881(d); and/or 19 USCS, §§1615.

### LEGAL CLAIM #2:

74. That, the acts and omissions of the Defts cited herein above at §§1-71, created a Tort Of Negligence Action-Claim Of Financial Interference, resulting in the cited injuries to the Plt.

75. That, the Plt, by reference, incorporates ¶¶1-71, as part of this Legal Claim #2, and states that the Defts interfered with the Plts right to gamble, and/or have money, and/or spend his money

as he saw fit, inclusive of ¶¶32(A)-32(M).

LEGAL CLAIM #3:

76. That, the acts and omissions of the Defts cited herein above at §§1-71, violated the laws of Rhode Island, and the United States; and the Constitution of the United States, resulting in the cited injuries to the Plt.

77. That, the Plt, by reference, incorporates ¶¶1-71, as part of this Legal Claim #3, and states, the Defts:

(A). at a bare minimum, violated RIGI §§21-28.5-04.1, above at ¶¶5(D);

(B). at a bare minimum, violated federal law, 21 USCS, §§853(a) and 881(d); and 19 USCS, §§1615, see above at ¶¶5(D);

(C). 42 USCS, §§1981-1988, see above ¶¶1;

(D). U.S. Constitution above at ¶¶32(A)-32(M).

LEGAL CLAIM #4:

78. That, the acts and omission of the Defts cited herein above at ¶¶1-71, created a <u>Willful and Malicious Tort Of Conversion</u> Of Personal Effects and $67,000.00 seized/converted/stolen from inside the SUV, and retention of recently recovered $25,996.oo;

79. That, the Plt, by reference, incorporates ¶¶1-71, as part of this Legal Claim #4, and states, the Defts:

(A). engaged in willful and malicious tort of conversion of the Plts property;

(B). see above at ¶¶49-51(A); 52(A)-52(G)(1)(2)(3)(4).

LEGAL CLAIM #5:

80. That, the acts and omissions of the Defts cited herein above at ¶¶1-71, created a Innocent, Technical, Reckless Tort Of Conversion Of Personal Effects and $67,000.00, seized/converted from inside the SUV; Defts have admitted they have $25,996.oo.

81. That, the Plt, by reference, incorporates ¶¶1-71, as part of this Legal Claim #5, and states, the Defts:

(A). engaged in an innocent, technical and reckless tort of conversion of the Plts property;

(B). see above at ¶¶49-50; 51(B); 53-54

## RELIEF REQUESTED

82. Order, a jury trial on all issues.

83. Order, the immediate return of the personal effects of the Plt.

84. Order, that the $67,000.00, will be returned to the Plt, with interest since April 29, 2016; return $25,996.oo, immediately.

85. Order, that the Defts will pay damages in the amount of not less than $10,000.00, nor more than $5 Million Dollars total.

86. Order, what other further, or greater relief the USDC deems is in the interest of justice.

87. Order, that DISCOVERY will be allowed on all issues.

Respectfully submitted,                    Dated: May 15, 2020

Richard Ferreira
Pro se
P.O. Box-8000
Shirley, MA. 01464

E X H I B I T - A

| DISTRICT COURT NO. | COURT DIVISION | POLICE NO. | | |
| --- | --- | --- | --- | --- |
| | 3rd | 16-70-WA | | |

**STATE OF RHODE ISLAND**
**DISTRICT COURT**
**CRIMINAL COMPLAINT**

| STATE EX REL | VS. DEFENDANT (NAME and ALIAS) RICHARD FERREIRA Alias- J. Doe | |
| --- | --- | --- |

DEFENDANT ADDRESS AND PHONE

| 45 DOVER ST | FALL RIVER | MA | |
| --- | --- | --- | --- |
| STREET | CITY | STATE | PHONE |

| DEF. D.O.B. 07/11/1978 | DEF. BCI NO. | DEF. SOC. SEC. NO. | DEF. M.V. LIC. NO. | DETERMINE ATTY DATE | PRE TRIAL DATE |
| --- | --- | --- | --- | --- | --- |
| OFFENSE DATE 04/29/2016 | ☐ DIVERS DATE | OFFICER/COMPLAINANT Chris Nightingale Detective Lieutenant Dana L. Fecker | | PRE-ARRAIGN CONF DATE 7·12·2016 | TRIAL DATE |
| POLICE DEPT/COMPLAINANT ADDRESS Lincoln Police Department, 100 Old River Road | | SGT. WALTER M. TRASZER | | SUPERIOR CT ARRAIGN DATE | MISC DATE/BAIL HRG/CONTROL |

ON BEHALF OF THE STATE I SWEAR THAT THE ABOVE DEFENDANT DID COMMIT THE FOLLOWING OFFENSES:

| TO ANY JUDGE OR JUSTICE OF THE PEACE: | | | |
| --- | --- | --- | --- |
| OFFICER/COMPLAINANT St. ·1·2441 A. Thager X | DATE 5/5/16 | SWORN TO BEFORE JUDGE/JUSTICE OF THE PEACE X A. M. McCarty | DATE 5·5·16 |

INITIAL APPEARANCE

| APPEARANCE DATE 5·7·2016 | BAIL FOR ALL ACCOUNTS $ ·1,000 (PR) | ARRAIGNMENT DATE 5·2·2616 | JUSTICE OF THE PEACE |
| --- | --- | --- | --- |

ARRAIGNMENT

| ARRAIGNMENT DATE | ADVISED OF RIGHTS ☐ YES ☐ NO | JURY TRIAL WAIVED ☐ YES ☐ NO | PLEA COUNT 1 No Plea | PLEA COUNT 2 | PLEA COUNT 3 |
| --- | --- | --- | --- | --- | --- |
| BAIL FOR ALL COUNTS $ | ATTORNEY NAME | ☐ PRIVATE ☐ COURT APPT ☐ P.D. | JUDGE/JUSTICE OF THE PEACE X | | |

| **COUNT 1** | STATUTE(S) VIOLATED | 21-28-4.01(C) (1) (a) | ☒ FELONY | ☐ MISDEMEANOR | ☐ VIOLATION | ☐ ORDINANCE |
| --- | --- | --- | --- | --- | --- | --- |

"On 04/29/2016 0515, FERREIRA, RICHARD, Did unlawfully possess a controlled substance classified as HEROIN as set fourth in Schedule (I II ETC) of '21-28-2.08 of the General Laws as amended, in violation of 21-28-4.01(C)(1)A of the General Laws as amended."

| DISPOSITION ☐ DISMISSAL ☐ GUILTY PLEA ☐ NOLO PLEA ☐ GUILTY FINDING | ☐ NOT GUILTY FINDING ☐ CASE FILED 1 YEAR ☐ INFO/TRUE BILL ☐ NO INFO/NO TRUE BILL ☐ OTHER | SENTENCE IMPOSED | |
| --- | --- | --- | --- |
| PROCEEDING ☐ ARRAIGN ☐ PRE TRIAL ☐ TRIAL ☐ OTHER | | APPEAL TAKEN ☐ | JUDGE X |

DATE

| **COUNT 2** | STATUTE(S) VIOLATED | | ☐ FELONY | ☐ MISDEMEANOR | ☐ VIOLATION | ☐ ORDINANCE |
| --- | --- | --- | --- | --- | --- | --- |

| DISPOSITION ☐ DISMISSAL ☐ GUILTY PLEA ☐ NOLO PLEA ☐ GUILTY FINDING | ☐ NOT GUILTY FINDING ☐ CASE FILED 1 YEAR ☐ INFO/TRUE BILL ☐ NO INFO/NO TRUE BILL ☐ OTHER | SENTENCE IMPOSED | |
| --- | --- | --- | --- |
| PROCEEDING ☐ ARRAIGN ☐ PRE TRIAL ☐ TRIAL ☐ OTHER | | APPEAL TAKEN ☐ | JUDGE X |

DATE

| **COUNT 3** | STATUTE(S) VIOLATED | | ☐ FELONY | ☐ MISDEMEANOR | ☐ VIOLATION | ☐ ORDINANCE |
| --- | --- | --- | --- | --- | --- | --- |

Li..oln Police Department                                      Page: 1
NARRATIVE FOR DETECTIVE SEAN E GORMAN
Ref: 16-858-OF

Entered: 05/03/2016 @ 1522          Entry ID: SGOR
Modified: 12/19/2018 @ 0844          Modified ID: KWIN

On 04/29/16 at approximately 0540hrs, I responded to the Courtyard Marriott at 636 Washington Highway for a report of a shooting that occurred an hour earlier.

Upon arrival to the Courtyard Marriott I entered the elevator to the 3rd floor and observed Gerron Harper ██████████ and Isabela Silva (a.k.a. "Bella" ██████████ speaking with officers (O/Kinniburgh, O/Sexton, O/Rodriguez). All of the aforementioned parties were staged near the soda machine area of the 3rd floor. O/Kinniburgh explained that an incident occurred in Room 318 of the Courtyard Marriott where an altercation took place and a victim, Richard Ferreira (a.k.a. "Richie" ██████████ , was possibly shot in the stomach and face. At this time, I immediately set up a perimeter and confirmed that only one room (320) was occupied at the time. The occupant of 320 was notified to stay in their room until they could safely be moved by the hotel. At this time I requested that O/Anterni start a log of all people that were in the room prior to my arrival, entered the crime scene during processing and even exited the elevator and inquired about the incident. As I began to process the scene, I observed a large amount of blood on the carpet in front of the room and two shell casings from a firearm clearly visible on the rug directly in front of Rm.318.

At this time I spoke with Silva and Harper who stated that they were in the room sleeping after checking in around 3:00am. Silva stated she was sleeping on the chair in the room and Harper stated he was on the bed when they heard Ferreira (Richie) yell and then heard two gun shots. Both stated that they jumped up to see two "figures" running out of the room and Ferreira stumbling backwards into the room. Harper stated that he grabbed Ferreira and asked him what happened to which Ferreira stated "I'm dying man!" Harper stated that there was a large amount of blood around Ferreira's head, face and stomach so he believed that Ferreira got shot in the face and stomach. Harper stated that Silva (Bella) yelled at him to "Run!" in fear that the shooters would come back so he took the elevator downstairs and walked out of the front door. Silva stated she remained in the room and covered Ferreira with a comforter from the bed until she also ran downstairs in order to look for help. Silva stated that she then observed Officers with their guns drawn on Harper and yelled that he was no the suspect and that they may still be in the hotel. Stories then began to vary as to where Harper and Silva went after police began searching for suspects, however a short time later both arrived back upstairs on the 3rd floor to check on Ferreira.

After briefly speaking with the witnesses, I began to photograph the scene starting with view from the elevator. I then moved into the room where I observed more blood on the carpet and walls. I also began observing teeth located on the carpet outside and inside the entrance way into the room. As I proceeded into the room, I observed a pile of items (including two cellular phone) in the middle of the room on the rug. I also observed a baggie of white powdery substance and an similar empty baggy, located on the desk in the front of the room near the TV cabinet. At this time, Chief Sullivan arrived on scene and informed me that the RI State Police were en route and would then be in charge of the scene. I then exited the room and awaited their arrival. A short time later, the scene was turned over to Det. Lt. Grassel and Det. Sgt. DeMarco from the RI State Police.

Later in the day, Det Tilson and I responded back to the Courtyard Marriott and field tested the aforementioned white substance which had been seized by the RI State Police. The substance tested positive for heroin. At this time, it was determined that all three occupants of the room would be charged with Possession of a Controlled Substance classified as Heroin.

L. coln Police Department                              Page: 2
NARRATIVE FOR DETECTIVE SEAN E GORMAN
Ref: 16-858-OF

Entered: 05/03/2016 @ 1522        Entry ID: SGOR
Modified: 12/19/2018 @ 0844       Modified ID: KWIN

The incident is still under investigation at the time of this report.

Lincoln Police Department                                                    Page: 1
GORMAN WITNESS STATEMENT
Ref: 16-254-AR

Entered: 07/06/2016 @ 0952          Entry ID: SGOR
Modified: 07/06/2016 @ 0954         Modified ID: SGOR

TIME: 0953
DATE: 07/06/2016
PLACE: LPD HQ

I, DETECTIVE SEAN GORMAN voluntarily without threats or promises make the following statements:

Q. What is your name?                    Q. What is your date of birth?
A. Sean Gorman                           A. N/A

Q. What is your present address?         Q. What is your occupation?
A. 100 Old River Rd. Lincoln RI 02865    A. Detective

On 04/29/16 at approximately 0540hrs, I responded to the Courtyard Marriott at 636 Washington Highway for a report of a shooting that occurred an hour earlier.

Upon arrival to the Courtyard Marriott I entered the elevator to the 3rd floor and observed Gerron Harper and Isabela Silva (a.k.a. "Bella" ) speaking with officers (O/Kinniburgh, O/Sexton, O/Rodriguez). All of the aforementioned parties were staged near the soda machine area of the 3rd floor. O/Kinniburgh explained that an incident occurred in Room 318 of the Courtyard Marriott where an altercation took place and a victim, Richard Ferreira (a.k.a. "Richie" ) was possibly shot in the stomach and face. At this time, I immediately set up a perimeter and confirmed that only one room (320) was occupied at the time. The occupant of 320 was notified to stay in their room until they could safely be moved by the hotel. At this time I requested that O/Anterni start a log of all people that were in the room prior to my arrival, entered the crime scene during processing and even exited the elevator and inquired about the incident. As I began to process the scene, I observed a large amount of blood on the carpet in front of the room and two shell casings from a firearm clearly visible on the rug directly in front of Rm.318.

At this time I spoke with Silva and Harper who stated that they were in the room sleeping after checking in around 3:00am. Silva stated she was sleeping on the chair in the room and Harper stated he was on the bed when they heard Ferreira (Richie) yell and then heard two gun shots. Both stated that they jumped up to see two "figures" running out of the room and Ferreira stumbling backwards into the room. Harper stated that he grabbed Ferreira and asked him what happened to which Ferreira stated "I'm dying man!" Harper stated that there was a large amount of blood around Ferreira's head, face and stomach so he believed that Ferreira got shot in the face and stomach. Harper stated that Silva (Bella) yelled at him to "Run!" in fear that the shooters would come back so he took the elevator downstairs and walked out of the front door. Silva stated she remained in the room and covered Ferreira with a comforter from the bed until she also ran downstairs in order to look for help. Silva stated that she then observed Officers with their guns drawn on Harper and yelled that he was no the suspect and that they may still be in the hotel. Stories then began to vary as to where Harper and Silva went after police began searching for suspects, however a short time later both arrived back upstairs on the 3rd floor to check on Ferreira.

Li    coln Police Department
GORMAN WITNESS STATEMENT
Ref: 16-254-AR

Entered: 07/06/2016 @ 0952          Entry ID: SGOR
Modified: 07/06/2016 @ 0954          Modified ID: SGOR

After briefly speaking with the witnesses, I began to photograph the scene starting with view from the elevator. I then moved into the room where I observed more blood on the carpet and walls. I also began observing teeth located on the carpet outside and inside the entrance way into the room. As I proceeded into the room, I observed a pile of items (including two cellular phone) in the middle of the room on the rug. I also observed a baggie of white powdery substance and an similar empty baggy, located on the desk in the front of the room near the TV cabinet. At this time, Chief Sullivan arrived on scene and informed me that the RI State Police were en route and would then be in charge of the scene. I then exited the room and awaited their arrival. A short time later, the scene was turned over to Det. Lt. Grassel and Det. Sgt. DeMarco from the RI State Police.

Later in the day, Det Tilson and I responded back to the Courtyard Marriott and field tested the aforementioned white substance which had been seized by the RI State Police. The substance tested positive for heroin. At this time, it was determined that all three occupants of the room would be charged with Possession of a Controlled Substance classified as Heroin.

SIGNATURE

Statement taken by:

_____
SIGNATURE

Witness: _____

_____

Lincoln Police Department                                          Page: 1
NARRATIVE FOR PATROL OFFICER STEPHEN A RODRIGUES
Ref: 16-835-OF

Entered:  04/29/2016 @ 0906        Entry ID: SROD
Modified: 05/19/2016 @ 2354        Modified ID: SROD
Approved: 05/22/2016 @ 0709        Approval ID: JBOL

On 04/29/16 at approximately 0520hrs., while at Twin River Casino with O/Legare handling a trespassing call, I was dispatched to the Courtyard Marriott at 636 Washington Highway for a report of an injured male with possible shots fired. While enroute dispatch informed us that one male had been shot and possible suspects had fled the scene.

Upon arrival to the Courtyard Marriott I entered the elevator to the 3rd floor when a black male wearing a blue t-shirt and dark colored jeans entered the elevator with me. The male subject later identified as ▓▓▓▓ ▓▓▓▓▓▓▓▓ identified himself as a friend of the victim and did state he was present in the hotel room during the shooting. ▓▓▓ could not articulate to me why he had left the scene and was now returning the hotel room. ▓▓▓▓▓ was in a agitated and nervous state and could not give me complete answers to what had transpired in the hotel room. As I exited the elevator ▓▓▓ er became extremely upset and agitated toward the police when he observed his friend laying on the floor. O/Kinniburg, O/Sexton and O/Anterni had already been on scene placed ▓▓▓ back on the elevator and O/Sexton escorted ▓▓▓ er to the hotel lobby.

I exited the elevator to the right, and observed a middle aged white male, later identified as Richard Ferreira (▓▓▓-78), dressed only in his underwear laying face down in the hallway in front of Rm. 318. Ferreira was talking hysterically to his girlfriend ▓▓▓▓▓▓▓▓▓▓▓▓ I observed blood on the top of Ferreira's head and an apparent wound on the left side of his torso. Two shell casing from a firearm were clearly visable on the rug next to the victim outside Rm.318.

Once the scene was cleared by the officers, I spoke to three witnesses in the adjacent hotel Rm. 316. The witnesses from Rm. 316, ▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ all completed witness statement forms on scene. ▓▓▓▓▓ stated she woke up from hearing two gun shots from the room to the left of them. Anna said she observed two darker skinned individuals walk by their room to the right after the incident. ▓▓▓ explained that she could hear a female screaming "Why Richie Why!", " Why would you open the door?" ▓▓▓ stated that after a couple minutes she looked outside her hotel room and walked down to Rm. 318 to see what happened when the door to Rm. 318 started to open. At that point she went back to her room and could hear someone yelling for help. ▓▓▓ said she went back outside to the Rm. 318 where she observed a caucasian male laying supine on the ground screaming for help ▓▓▓ said she threw him a towel and thats when the police arrived.

▓▓▓▓▓ stated she woke up to people screaming and yelling in the hallway, then heard a banging noise. ▓▓▓ said she could hear a hysterical female screaming "Why Richie why!". ▓▓▓ explained that after the incident she could hear people running up and down the hallway for what seemed like minutes. Parker stated that he heard two gun shots and people screaming and yelling "Why, why, why!".

While interviewing the witnesses, Rescue 2 arrived on scene and transported Ferreira to RI Hospital for further medical evaluation. I did a perimeter search of the immediate area for any additional evidence with negative results. The front desk clerk identified as ▓▓▓▓▓▓▓▓ (DOB unknown) stated that he did not observe the suspects enter the hotel at approximately 0500hrs. The GM of the Courtyard Marriott arrived on scene a short time later and was able to use the surveillance cameras to identified two black males entering the lobby of the hotel at approximately 0505hrs.

O/Kinneberg secured the scene and had dispatch contact Detective Gorman to respond for processing.



Lincoln Police Department.
Incident Report·

Page: 1·
06/15/2018

Incident #: 16-835-OF ·
Call·#: 16-10745

Date/Time Reported:  04/29/2016 0515
· Report Date/Time:  04/29/2016 0801
Occurred Between:  04/29/2016 0500-04/29/2016 0540
. Status:  Incident Closed By Arrest

Reporting Officer:  Patrol Officer STEPHEN RODRIGUES
· Assisting Officer:  Patrol Officer JOSEPH ANTERNI
Approving Officer:  Sergeant JASON BOLDUC

       Signature:
Additional Cases:  16-254-AR
                   16-253-AR

       Signature:

### OFFENSE(S)                                    ATTEMPTED      TYPE

   LOCATION TYPE:  Hotel/Motel/Temp. Lodgings     Zone: Middle North
   COURTYARD MARRIOTT
   636 WASHINGTON HWY·
   LINCOLN RI 02865

1  ASSAULT W/ INTENT TO COMMIT A FELONY               N            Felony
   11-5-1              11-5      1 - SERIOUS INJURY
                 OCCURRED: 04/29/2016    0500.
       SUSPECTED OF USING: Not Applicable
       CRIMINAL ACTIVITY: None/Unknown
   WEAPON/FORCED USED: Handgun
         BIAS AGAINST: No Bias
   AGGR. ASSAULT/HOMICIDE: Unknown Circumstances

2  ROBBERY-1ST DEGREE                                 N            Felony .
   11-39-1/1D          11-39     1
                 OCCURRED: 04/29/2016    0520
       SUSPECTED OF USING: Not Applicable  .
       ·CRIMINAL ACTIVITY: None/Unknown
       WEAPON/FORCED USED: Handgun

### VICTIM(S)                                SEX  RACE  AGE   SSN       PHONE

FERREIRA, RICHARD                            M    W    37
45 DOVER ST
FALL RIVER MA

DOB:      /1978
INJURIES:
ETHNICITY: Not of Hispanic Origin
RESIDENT STATUS: Non Resident
TAKEN TO: Rhode Island Hospital
TAKEN BY: Rescue 2
TREATED DATE: 04/29/2016 @ 0545
VICTIM CONNECTED TO OFFENSE NUMBER(S): 1   2



**Headquarters**
**Incident Report**

## Incident #: 16RIX1-763-OF

Date/Time Reported: 04/29/2016 0630
Report Date/Time: 04/29/2016 1156
Occurred Between: 04/29/2016 0330-04/29/2016 1200
Status: Incident Open

Reporting Officer: Corporal SCOT BARUTI
Assisting Officer: Detective MARC ALBOUM
Approving Officer: Corporal SCOT BARUTI

Signature: _____

Signature: _____



| # | OFFENSE(S) | | | ATTEMPTED | TYPE | |
|---|---|---|---|---|---|---|

LOCATION TYPE: Residence/Home/Apt./Condo    Zone: Lincoln Area
45 DOVER STREET
45 DOVER ST
FALL RIVER MA

| # | OFFENSE(S) | | | ATTEMPTED | TYPE | |
|---|---|---|---|---|---|---|
| 1 | FELONY ASSAULT/ DANG. WEAPON OR SUBSTANCE | | | N | Felony | |
| | 11-5-2 | 11-5 | 2 | | | |
| | OCCURRED: 04/29/2016 | 0400 | | | | |

| # | VICTIM(S) | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|
| 1 | FERREIRA, RICHARD | M | W | 37 | | |

DOB:
INJURIES: Other Major Injury
ETHNICITY: Not of Hispanic Origin
RESIDENT STATUS: Resident
VICTIM CONNECTED TO OFFENSE NUMBER(S): 1

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 1 | HARPER, GERRON A | PARTICIPANT | M | B | 21 | | |

DOB:

| 2 | SILVA, ISABELA | PARTICIPANT | F | W | 39 | | |

DOB:
EMPLOYER: MASSHEALTH

Headquarters
Incident Report

Incident #: 16RIX1-763-OF

| # | PERSON(S) | PERSON TYPE | SEX | RACE | AGE | SSN | PHONE |
|---|---|---|---|---|---|---|---|
| 3 | FLINT, CHARLES | OTHER | M | W | 45 | | |
| | DOB: | | | | | | |
| 4 | JEFFERSON, CLIFTON T | PARTICIPANT | M | W | 23 | | |
| | DOB: | | | | | | |
| 5 | SANTIAGO, ABRAM | WITNESS | M | W | 27 | | |
| | DOB: | | | | | | |
| 6 | WATKINSON, MARK | WITNESS | M | W | 55 | | |
| | DOB: | | | | | | |

| # | VEHICLE(S) | YEAR | MAKE | STYLE | COLOR1 | COLOR2 | REG | VALUE |
|---|---|---|---|---|---|---|---|---|
| 1 | SUV | 2005 | MERZ | SU | GRY | | MA 2NX159 | |

STATUS: Evidence (Not Nibrs Reportable)
Property #: 16RIX1-1321-PR
VIN: 4JGAB57E15A543741
TOWED TO: Headquarters
311 DANIELSON PKE
SCITUATE RI 02857
TOWED BY: Knox's Towing

DATE: 04/29/2016

TOWING CHARGES:

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 1 | BLUE FRUIT OF LOOM MENS UNDERWEAR | 16RIX1-1239-PR | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1   VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 04/29/2016 | | |
| | OWNER: FERREIRA, RICHARD | | |
| 2 | UNLIMITED PATIENCE KHAKI SHORTS SIZE XL | 16RIX1-1240-PR | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1   VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 04/29/2016 | | |
| | OWNER: FERREIRA, RICHARD | | |
| 3 | TOUCH DNA SWAB HNDL 3RD FLR WEST STRWELL | 16RIX1-1241-PR | Evidence (Not Nibrs Reportable) |
| | QUANTITY: 1   VALUE: | | |
| | SERIAL #: NOT AVAIL | | |
| | DATE: 04/29/2016 | | |

**Headquarters**
**Incident Report**

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 4 | TOUCH DNA SWAB 1ST FLR HNDL 1ST FL WTHAL VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1242-PR | Evidence (Not Nibrs Reportable) |
| 5 | TCH DNA SWAB 1ST FL EXT OUT WEST STRWLL VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1243-PR | Evidence (Not Nibrs Reportable) |
| 6 | TCH DNA SWB INT BAR 1ST FL OUT WEST STRW VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1244-PR | Evidence (Not Nibrs Reportable) |
| 7 | TCH DNA SWB 3RD FL EAST STRWLL VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1245-PR | Evidence (Not Nibrs Reportable) |
| 8 | GSR KIT FROM GERRON HARPER 7/15/94 VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1246-PR | Evidence (Not Nibrs Reportable) |
| 9 | IPHONE CHARGER CORD VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1247-PR | Evidence (Not Nibrs Reportable) |
| 10 | BLACK G-STAR RAW T-SHIRT VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1248-PR | Evidence (Not Nibrs Reportable) |
| 11 | BLUE LEVIS JEANS VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1249-PR | Evidence (Not Nibrs Reportable) |
| 12 | LEFT REPUBLICA SNEAKER VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1250-PR | Evidence (Not Nibrs Reportable) |
| 13 | RIGHT REPUBLICA SNEAKER VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1251-PR | Evidence (Not Nibrs Reportable) |
| 14 | CARTRIDGE CASING- HALLWAY P#1 VALUE: QUANTITY: 1 SERIAL #: NOT AVAIL DATE: 04/29/2016 | 16RIX1-1252-PR | Evidence (Not Nibrs Reportable) |

Headquarters
Incident Report

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 15 | SUSPECTED TOOTH- HALLWAY P#2<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1253-PR | Evidence (Not Nibrs Reportable) |
| 16 | CARTRIDGE CASING - HALLWAY P#3<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1254-PR | Evidence (Not Nibrs Reportable) |
| 17 | SUSPECTED TOOTH - HALLWAY P#4<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1255-PR | Evidence (Not Nibrs Reportable) |
| 18 | RED ELASTIC - HALLWAY P#5<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1256-PR | Evidence (Not Nibrs Reportable) |
| 19 | RED/BROWN STAIN - HALLWAY P#6<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1257-PR | Evidence (Not Nibrs Reportable) |
| 20 | BED SHEETS - HALLWAY P#7<br>QUANTITY: 3       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1258-PR | Evidence (Not Nibrs Reportable) |
| 21 | BLUE SHIRT IN DOOR - P#8<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1259-PR | Evidence (Not Nibrs Reportable) |
| 22 | RED/BROWN STAIN-LEFT EXT DOOR JAMB- P#9<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1260-PR | Evidence (Not Nibrs Reportable) |
| 23 | RED/BROWN STAIN EXT DOOR HANDLE- P#10<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1261-PR | Evidence (Not Nibrs Reportable) |
| 24 | RED/BROWN STAIN EXT DOOR - P#11<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1262-PR | Evidence (Not Nibrs Reportable) |
| 25 | RED/BROWN STAIN RGHT EXT DOOR JAMB- P#12<br>QUANTITY: 1       VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1263-PR | Evidence (Not Nibrs Reportable) |

RISP0022

Headquarters
Incident Report

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 26 | RED/BROWN STAIN INTER DOOR HANDLE P#13<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1264-PR | Evidence (Not Nibrs Reportable) |
| 27 | RED/BROWN STAIN EAST WALL NEAR DOOR P#14<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1265-PR | Evidence (Not Nibrs Reportable) |
| 28 | RED/BROWN STAIN CARPET NEAR DRWAY P#15<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1266-PR | Evidence (Not Nibrs Reportable) |
| 29 | CELL PHONE CORDS W CHARGER P#16<br>QUANTITY: 3          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1267-PR | Evidence (Not Nibrs Reportable) |
| 30 | SUSPECTED TEETH INTERIOR ROOM- P#17<br>QUANTITY: 4          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1268-PR | Evidence (Not Nibrs Reportable) |
| 31 | BROWN PURSE -FLOOR OF ROOM- P#18<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1269-PR | Evidence (Not Nibrs Reportable) |
| 32 | ROSE/WHITE I-PHONE W/ CASE P#19<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1270-PR | Evidence (Not Nibrs Reportable) |
| 33 | MISC. ITEMS FROM FLOOR ROOM- P#21<br>QUANTITY: 1          VALUE: *includes $ 20.12*<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1271-PR | Evidence (Not Nibrs Reportable) |
| 34 | I-PAD ON DESK P#22<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1272-PR | Evidence (Not Nibrs Reportable) |
| 35 | SUSPECTED DRUGS/PACKAGING ON DESK P#23<br>QUANTITY: 4          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1273-PR | Evidence (Not Nibrs Reportable) |
| 36 | BLACK PURSE ON DESK P#24<br>QUANTITY: 1          VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 04/29/2016 | 16RIX1-1274-PR | Evidence (Not Nibrs Reportable) |

**Headquarters**
**Incident Report**

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 37 | BASEBALL HAT ON DESK P#25    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1275-PR | Evidence (Not Nibrs Reportable) |
| 38 | SNEAKERS FROM BETWEEN BEDS P#26    VALUE:<br>QUANTITY: 2<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1276-PR | Evidence (Not Nibrs Reportable) |
| 39 | WOMENS SANDLES ON FLOOR- P#27    VALUE:<br>QUANTITY: 2<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1277-PR | Evidence (Not Nibrs Reportable) |
| 40 | BLACK JACKET W/ DESIGN ON CHAIR- P#28    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1278-PR | Evidence (Not Nibrs Reportable) |
| 41 | SOCKS ON HEATER- P#29    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1279-PR | Evidence (Not Nibrs Reportable) |
| 42 | GATORADE BOTTLE ENTRYWAY TABLE -P#30    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1280-PR | Evidence (Not Nibrs Reportable) |
| 43 | GATORADE BOTTLE NGHTSTND BETWN BEDS-P#31    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1281-PR | Evidence (Not Nibrs Reportable) |
| 44 | PIECE OF PLASTIC NEAR NORTH BED- P#32    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1282-PR | Evidence (Not Nibrs Reportable) |
| 45 | SUSPECTED TOOTH CARPET INSIDE DRWY- P#33    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1283-PR | Evidence (Not Nibrs Reportable) |
| 46 | ROSE/WHITE IPHONE P#20    VALUE:<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1284-PR | Evidence (Not Nibrs Reportable) |
| 47 | BLACK COOLPAD - TOP CTR CONSOLE    VALUE: $100.00<br>QUANTITY: 1<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1288-PR | Seized (Not Previously Stolen) |

Headquarters
Incident Report

Page: 7
11/29/2019

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 48 | GLD/WHT IPHONE 6S+ BLK CASE FROM VEHICLE<br>QUANTITY: 1 VALUE: $500.00<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1289-PR | Seized (Not Previously Stolen) |
| 49 | BLACK HUAWEI CELLPHONE REAR OF MERCEDES<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1290-PR | Evidence (Not Nibrs Reportable) |
| 50 | VARIOUS BAGS FROM CASH SEIZURE - GLV BOX<br>QUANTITY: 3 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1291-PR | Evidence (Not Nibrs Reportable) |
| 51 | ASSORTED US CURRENCY - GLOVE BOX<br>QUANTITY: 1 VALUE: $23,040.00<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016<br>OWNER: FERREIRA, RICHARD | 16RIX1-1292-PR | Seized (Not Previously Stolen) |
| 52 | BLK MOTOROLA CELL/CASE - LNDRY BAG CAR<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1293-PR | Evidence (Not Nibrs Reportable) |
| 53 | BLK LG CELL - CLEAR BAG IN TRUNK<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1294-PR | Evidence (Not Nibrs Reportable) |
| 54 | BLK LG CELL NO BACKING - CLEAR BAG TRUNK<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1295-PR | Evidence (Not Nibrs Reportable) |
| 55 | BLK COOLPAD CRCK SCREEN - CLEAR BAG TRNK<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1296-PR | Evidence (Not Nibrs Reportable) |
| 56 | WHT/SLV IPHONE 6+ SLV CASE-CLR BAG TRUNK<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1297-PR | Evidence (Not Nibrs Reportable) |
| 57 | BLK IPAD GLD CASE-CLEAR BAG IN TRUNK<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 04/29/2016 | 16RIX1-1298-PR | Evidence (Not Nibrs Reportable) |
| 58 | SCRIP BTL-26 PINK PILLS- CTR CONSOLE<br>QUANTITY: 1 VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1299-PR | Evidence (Not Nibrs Reportable) |

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 59 | ASSORTED FREE STNDNG CASH WITHIN VEHICLE<br>QUANTITY: 6   VALUE: $25.00<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1300-PR | Evidence (Not Nibrs Reportable) |
| 60 | TOUCH DNA STEERING WHEEL-MERCEDES<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1302-PR | Evidence (Not Nibrs Reportable) |
| 61 | TOUCH DNA SHIFTER - MERCEDES<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1303-PR | Evidence (Not Nibrs Reportable) |
| 62 | MOUNTAIN DEW BTL - FRONT PASS SEAT<br>QUANTITY: 1   VALUE: $0.00<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1304-PR | Seized (Not Previously Stolen) |
| 63 | RED BULL CAN - FRNT PASS CUP HOLDER<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1305-PR | Evidence (Not Nibrs Reportable) |
| 64 | COUNTERFEIT $20 BILL<br>QUANTITY: 1   VALUE: $0.00<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016<br>OWNER: SILVA, ISABELA | 16RIX1-1306-PR | Seized (Not Previously Stolen) |
| 65 | ASSORTED US CURRENCY-GUESS PURSE TRUNK<br>QUANTITY: 1   VALUE: $2,210.00<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1307-PR | Evidence (Not Nibrs Reportable) |
| 66 | GUESS PURSE FROM TRUNK<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1308-PR | Evidence (Not Nibrs Reportable) |
| 67 | MA LIC FROM GUESS PURSE - C FLINT<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1309-PR | Evidence (Not Nibrs Reportable) |
| 68 | $699.27 RECOVERED FR BLACK PURSE:1274-PR<br>QUANTITY: 1   VALUE: $699.27<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1310-PR | Evidence (Not Nibrs Reportable) |
| 69 | TOUCH DNA SWAB-45 CAL CASING FR 1252-PR<br>QUANTITY: 1   VALUE:<br>SERIAL #: NOT AVAIL<br>DATE: 05/02/2016 | 16RIX1-1311-PR | Evidence (Not Nibrs Reportable) |

Headquarters
Incident Report

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|

70  TOUCH DNA SWAB-45 CALCASING FR 1254-PR          16RIX1-1312-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/02/2016

71  SWAB OF  RED BROWN STAIN FROM 1254-PR           16RIX1-1313-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/02/2016

72  BLACK USB DRIVE- DOT FOOTAGE RTE 146/116  16RIX1-1315-PR    Seized (Not Previously Stolen)
    QUANTITY: 1                   VALUE: $1.00
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

73  3 $1 BILLS RECOVERED FROM 1269-PR               16RIX1-1316-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 3                   VALUE: $3.00
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

74  SET OF KEYS FROM 1271-PR                        16RIX1-1317-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

75  MA LICENSE FROM 1269-PR- ISABELA SILVA          16RIX1-1318-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

76  TOUCH DNA SWAB OF EXT DOOR HANDLE RM 318  16RIX1-1322-PR    Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 04/29/2016

77  CUTTING STAIN #1 1248-PR                        16RIX1-1324-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

78  CUTTING STAIN #2 1248-PR                        16RIX1-1325-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

79  CUTTING OF SHOELACE FROM 1250-PR                16RIX1-1326-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

80  SWAB OF SUSPECTED BLOOD FROM 1251-PR            16RIX1-1327-PR      Evidence (Not Nibrs Reportable)
    QUANTITY: 1                          VALUE:
    SERIAL #: NOT AVAIL
        DATE: 05/03/2016

Incident #: 16RIX1-763-OF

| # | OTHER PROPERTIES | PROPERTY # | STATUS |
|---|---|---|---|
| 81 | LATENT LIFT CARD EXT DOOR HAND RM 318<br>QUANTITY: 1      VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 05/05/2016 | 16RIX1-1336-PR | Evidence (Not Nibrs Reportable) |
| 82 | LATENT PRINT LIFTS FROM MERCEDES<br>QUANTITY: 4      VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 05/05/2016 | 16RIX1-1337-PR | Evidence (Not Nibrs Reportable) |
| 83 | SURVEILLANCE FOOTAGE COURTYARD HOTEL<br>QUANTITY: 1      VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 05/06/2016 | 16RIX1-1358-PR | Evidence (Not Nibrs Reportable) |
| 84 | STANLEY SCREW DRIVER - FRONT DRIV SIDE<br>QUANTITY: 1      VALUE: $0.00<br>SERIAL #: NOT AVAIL<br>    DATE: 05/09/2016 | 16RIX1-1363-PR | Seized (Not Previously Stolen) |
| 85 | ROSE COLORED I PHONE 6S PLUS, A1687<br>QUANTITY: 1      VALUE: $500.00<br>SERIAL #: FCC ID:BCG-E2944A<br>    DATE: 05/10/2016<br>    OWNER: HARPER, GERRON ALAN | 16RIX1-1393-PR | Seized (Not Previously Stolen) |
| 86 | ITEMS FROM HAMPTON INN WESTPORT<br>QUANTITY: 1      VALUE:<br>SERIAL #: NOT AVAIL<br>    DATE: 06/17/2016 | 16RIX1-1967-PR | Held for Safe Keeping |

E X H I B I T - B

Tel. 401.273.5600 • Fax. 401 454-5600

**John M. Cicilline**

The State Bank Building • 383 Atwells Avenue   Providence, Rhode Island 02909

ATTORNEY & COUNSELLOR AT LAW

May 1, 2019

VIA US Mail

Richard Ferreira #W110543
P.O. Box 8000
Shirley, MA 01464

Dear Mr. Ferreira:

I hope this letter finds you well.

I am in receipt of your letter dated April 25, 2019.

First, the Newport District court warrant stems from case number 21-2017-02506. To resolve this, I will need you to provide me with proof of the date you entered into Massachusetts's custody and an anticipated release date. Upon receipt of this information I will file a motion to quash the warrant.

Secondly, I have inquired with the Rhode Island Attorney General's office as to where your seized money is without success. In order to file a Motion for Return of Evidence, I will need the documentation you have showing that The State Police are in possession of your seized $67,000.

I will be in contact with your girlfriend Nicole should I have any updates between now and when the above information is provided to me.

In the meantime, please do not hesitate to write me if you have any additional questions or information that may be helpful with your two matters.

Thank you for your continued patience and business.

Sincerely,

John M. Cicilline, Esquire

E X H I B I T - C

5/21/2018

Man shot at Lincoln hotel, suspect at large | WJAR

☁ 57°



NEWS (/) WEATHER (/WEATHER) SEND TO 10 I-TEAM (HTTP://TURNTO10.COM/I-TEAM) (/weather)

ADVERTISEMENT

# Man shot at Lincoln hotel, suspect at large

by TONY GUGLIOTTA, NBC 10 NEWS



A 38-year-old man was shot at the Courtyard Marriott hotel on George Washington Highway in Lincoln early Friday morning, police said. (WJAR)

Man shot at Lincoln hotel, suspect at large | WJAR



(/news/local/gallery/courtyard-hotel-shooting-under-investigation-in-lincoln#photo-1)

(/news/local/gallery/courtyard-hotel-shooting-under-investigation-in-lincoln#photo-2)

## VIEW PHOTO GALLERY

3 photos  (/news/local/gallery/courtyard-hotel-shooting-under-investigation-in-lincoln)

| AA | f | 🐦 | ✉ (mailto:?subject=A%20link% |
|---|---|---|---|

## LINCOLN, R.I. (WJAR) —

A 38-year-old man was shot at the Courtyard Marriott hotel on George Washington Highway in Lincoln early Friday morning, police said.

Rhode Island State Police said the man, who was also assaulted, was taken to Rhode Island Hospital for surgery after the 5 a.m. shooting.

Hotel guests who spoke to NBC 10 News were surprised to hear the news. They said they didn't know anything had happened at the hotel.

Tom Dempsey said he slept through the shooting.

"I woke up in the hotel and I looked outside and there were a lot of police cars and the news

media was here," said Dempsey, who is staying at the hotel. "I thought, 'well, there must be somebody famous here or something bad happened last night.' When I went down for breakfast, I got stopped in the stairwell by a state policeman that just said it was a secure area."

While the state police crime lab was still at the scene processing and collecting evidence more than 12 hours later, the case has been taken over by the Lincoln Police Department.

A vehicle, with Massachusetts plates, was towed from the scene earlier in the day. Police have not yet said what, if anything, it may have to do with the investigation.

As of 5 p.m., the hotel appeared to be operating as normal.

The hotel manager and police said it was an isolated incident and guests should not worry.

"This does not appear to be a random act," Capt. Philip Gould of the Lincoln Police Department said. "The suspect and victim apparently did know each other. There is no reason to believe there is any danger here on scene."

Lincoln police have an officer on detail inside the hotel as the investigation continues.

Despite the shooting, Dempsey said he feels safe.

"The police that are here -- both the local and state police -- seem to have everything under control," Dempsey said. "There's no indication that there's anything active going on."

But the suspect is still at large. Police said they believe the suspect fled the scene before

5/21/2018

Man shot at Lincoln hotel, suspect at large | WJAR

they arrived.

According to police, the victim is in "stable, but guarded condition."

ADVERTISEMENT

E X H I B I T - D

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lincoln Town Hall
Attn: Mayor, Town of Lincoln
100 Old River Road
Lincoln, Rhode Island 02865



9590 9402 2829 7069 7642 31

2. Article Number (Transfer from service label)

7017 0660 0000 9418 5114

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent ☐ Address

B. Received by (Printed Name)     C. Date of Delive

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☑ No

USPS

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restri Delivery
☑ Return Receipt for Merchandise
☐ Signature Confirmatio
☐ Signature Confirmatio Restricted Delivery

Domestic Return Recei

**USPS TRACKING #**



9590 9402 2829 7069 7642 31

United States
Postal Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Richard Ferreira
P.O. Box-8000
Shirley, MA. 01464



**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Lincoln Town Hall
Attn: Chief of Police
         Lincoln Police Dept.
100 Old River Road
Lincoln, Rhode Island   02865

9590 9402 2829 7069 7642 48

2. Article Number *(Transfer from service label)*

7017 0660 0000 9418 5107

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
                                          ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Deliver

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☑ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
   (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restrict
   Delivery
☐ Return Receipt for
   Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

Domestic Return Receip

---

**USPS TRACKING #**

9590 9402 2829 7069 7642 48

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States**
**Postal Service**

• Sender: Please print your name, address, and ZIP+4® in this box•

Richard Ferreira
P.O. Box-8000
Shirley, MA. 01464

March 6, 2019

JOINTLY ADDRESSED TO:


Lincoln Police Department (LPD)          (Service by Certified Return Receipt
Attn: Chief of Police, LPD               Requested Mail No. 7017 0660 0000
100 Old River Road                       9418 5107)
Lincoln, Rhode Island 02865

&

Lincoln Town Hall                        (Service by Certified Return Receipt
Attn: Mayor, Lincoln, Rhode Island       Requested Mail No. 7017 0660 0000
100 Old River Road                       9418 5114)
Lincoln, Rhode Island 02865


RE: Demand In the Nature Of A Tort
    Claim, And A Civil Rights Claim
    For The Return Of Approximately
    $67,000.oo In Gambling Profits
    Seized From Richard Ferreira On
    Or about April 29, 2016 At The
    Courtyard Marriott Hotel, 636
    Washington Highway, Lincoln,
    Rhode Island, After Richard
    Ferriera Was Found Shot In The
    Doorway Of his Rented Hotel
    Room 318.


Dear LPD Chief of Police, and Mayor:

    On the above date, April 29, 2016, Mr. Ferreira was shot, and
the LPD seized some $67,000.oo, from a Mercedes SUV, owned by a friend
of Mr. Ferreira. The nexus of the search and seizure, to the shooting
is questionable at best.

    Neverthessless, this amount of money was been seized, and/or,

converted to the possession of the Town of Lincoln, Rhode Island, without due process of law.

Each time that Mr. Ferreira, contacted the Town of Lincoln, or LPD, he was notified that the money was being held pending a criminal investigation.

Very quickly, let us understand, that if the LPD has not, or cannot make a case for the actual forfeiture of this money in a period of 34 months, it is doubtful, that the LPD ever will. Further, if the LPD can't make a case after 34 months, that also would tend to reflect a lack of adequate police work.1/

Mr. Ferreira contends that the money is from gambling: a fact proven by the Twin River Casino cameras, which would show that Mr. Ferreira was present in that Casino, prior to checking into the hotel where he was shot: and private poker games on casino premises*.

Further, it is necessary to point out the obvious, such as no receipt issued by the LPD for the money, to Mr. Ferreira, plus:

  (1). Mr. Ferreira was arrested, but the criminal charges against him, were dismissed, almost immediately following the shooting; he was a victim, and nothing more;
  (2). the Mercedes SUV was returned to the owner, and not forfeited; why return the SUV, but not the money?;
  (3). there has been no release to Mr. Ferreira, of any Report, or Warrant, which would allow, or did allow, and reflect, the seizure of the SUV and the money was legally done; obviously, if the seizure was legal, there should be a paper trail;
  (4). there was no NOTICE of seizure, or forfeiture of the money in question; no forfeiture hearing as of this date;
  (5). no criminal investigation is indefinite, and it must end at this time, in the absence of evidence to continue it;
  (6). this seizure has failed to date, to comply with forfeiture laws of Rhode Island, or the United States.

If, the money is not returned to Mr. Ferreira, within 14 working days, the following course of action will be taken:

  (A). A Civil Action will be filed, and allege in part, Civil Rights violations by the LPD/Town of Lincoln, against Mr. Ferreira;
  (B). conversion of property, to wit, the money in question will be alleged;
  (C). $5,000,000.oo in damages will be sought from the LPD/Town of Lincoln, for denying Mr. Ferreira, his money.

This NOTICE will take effect on the date, that the Certified Service of this Letter is accepted by the LPD/Town of Lincoln

Thank you for your time in this matter.

*Gambling in Connecticut as well.

    I look forward to your reply in this matter. Obviously, if you
had issued a recipt for the money that was seized, that would make
its return alot easier. In the absence of the receipt, it makes it
appear that the LPD simply converted the funds to the use of the LPD,
and Town of Lincoln, Rhode Island. Which, I hope is not the case.
Thank you for your time in this matter.

Respectfully submitted,

*Richard Ferreira*

Richard Ferreira
P.O. Box-8000
Shirley, Massachusetts 01464

cc: Chief, LPD
    Mayor, Town of Lincoln, R.I.
    file

---

1/Please review the attached newsclipping. This is a NBC 10 NEWS Report. The two
facts in this Report that are relevant and interesting is: (A). reference to a
vehicle with Massachusetts license plates being towed from the scene of the hotel
by LPD. Since the crime of shooting Mr. Ferreira occurred inside Room 318, and
at his doorway, within the Hotel, what probable cause existed to tow the vehicle
from the Hotel? Was there a Warrant to seize the Vehicle? So far, LPD has not
produced a Warrant, and since the $67,000.oo was in the vehicle, a logical
inference may be drawn, that the vehicle was towed for no other reason, than to
illegally seize - hold the money; (2). LPD Capt. Philip Gould was quoted as
stating: "The suspect and the victim apparently did know each other. There is
no reason to believe there is any danger here on scene." If, Mr. Ferreira, did
allegedly know the man who shot him, and that information was known to the LPD
as early as the hours immediately folling the shooting, why is it that after 34
months - the LPD have not arrested, and charged this gunman with attempted murder?
Mr. Ferreira did not know who shot him. But, in delaying the arrest of the gunman,
the LPD continue to claim an onoing investigation is preventing the return of
the money. It is interesting that they have had information for 34 months as to
this identity, but failed to arrest anyone.

E X H I B I T - E



April 3, 2019

501 WAMPANOAG TRAIL I SUITE 301
EAST PROVIDENCE I RI I 02915
PH: (401) 438-6511
RI: (800) 511-5975
FAX: (401) 438-6990
CLAIMS FAX: (401) 434-6094
www.ritrust.com

Richard Ferreira
PO Box 8000
Shirley, MA 01464

RE:    Claim No.:          111799-PP-01
       Date of Loss:       4/29/2016
       Insured Member:     Town of Lincoln

Dear Mr. Ferreira:

I have reviewed your demand letter sent to the Town of Lincoln and the Lincoln Police Department. I also obtained and reviewed the police reports from Lincoln Police Department regarding the incident in question.

Based on my investigation, the involvement of the Lincoln Police Department was the initial arrival to the hotel for a shooting, to secure the scene, and interview witnesses. It appears that once the Rhode Island State Police arrived, they took over the investigation.

The Lincoln Police Department never had possession of the Mercedes, therefore never in possession of the money in question.

At this time, I have no alternative but to deny your claim for damages. Please contact me if you would like to discuss this matter further.

Sincerely,

M. Baldinelli

Melissa Baldinelli
Claims Representative II Property/Liability
Ext. 535
mbaldinelli@ritrust.com





PROVIDENCE
RI 028
26 MAR '19
PM 3-L



501 WAMPANOAG TRAIL | SUITE 301 | EAST PROVIDENCE | RI | 02915

Richard Ferreira
PO Box 8000
Shirley, MA 01464

0464-800000

