UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RICHARD FERREIRA,<br>    Plaintiff, | ) ) ) ) | |
| v. | ) ) | C.A. No. 19-200-JJM-PAS |
| TOWN OF LINCOLN, et al.,<br>    Defendant. | ) ) ) ) | |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

Richard Ferreira was shot while staying at a hotel in Lincoln, Rhode Island after gambling at a nearby casino. He has brought five claims in this suit against the Town of Lincoln, Lincoln Police Department and several of its officers,[1] and the Rhode Island State Police, and several of its officers,[2] alleging that, after responding to the shooting incident, they improperly seized Mr. Ferreira's Mercedes SUV and $67,000 contained therein, and seeking return of monies and other damages. After discovery, the Lincoln Defendants move for summary judgment on all claims. ECF No. 64. Finding that it is undisputed that the Lincoln Defendants had no contact with Mr.

---

[1] Chief of Police Brian Sullivan, Captain Philip Gould, Detective Sean Gorman, Detective Lieutenant Dana Packer; Sergeants Christopher Nightingale, Jason Bolduc, and Walter Ptaszek; and Patrol Officers Stephen Rodrigues, Joseph Anterni, Brendan Legare, Kyle Kinniburgh, and Jonathon Sexton (collectively the "Lincoln Defendants").

[2] The Rhode Island State Police and individual troopers have not moved for summary judgment.

Ferreira's car or his money during their roles in the investigation, the Court GRANTS the Lincoln Defendants' Motion for Summary Judgment. *Id.*

## I.   BACKGROUND

After traveling with Isabela Silva, a female friend, to various casinos in Connecticut and Rhode Island, Mr. Ferreira rented a hotel room at the Courtyard Marriott Providence Lincoln Hotel in Lincoln, RI ("Marriott").  ECF No. 41 ¶¶ 1-2.[3] Once they were in their room, men claiming to be hotel employees knocked on the door. *Id.* ¶ 3.  Mr. Ferreira answered the door and these men shot him twice while trying to rob him. *Id.* ¶ 4.

Officers Rodrigues, Sexton, Anterni, and Kinniburgh were dispatched to the Marriott in response to a report of shots fired.  ECF No. 63 ¶ 1; ECF No. 41 ¶ 5. Dispatch notified the officers that a man was seen leaving the Marriott for a Sunoco gas station next door.  ECF No. 63 ¶ 2.  Once at the gas station, Officer Anterni placed the suspect, later identified as Gerron Harper, in handcuffs. *Id.* ¶ 5.  He then saw Ms. Silva running towards the gas station, screaming that her boyfriend, Mr. Ferreira, had been shot at the Marriot and the shooters were possibly still inside the hotel. *Id.* ¶ 6.  Officer Anterni removed Mr. Harper's handcuffs, determining he was not a suspect and proceeded with Officer Kinniburgh to the Marriott. *Id.* ¶ 7.

---

[3] The Court usually prefers to cite to statements of undisputed facts, but Mr. Ferreira did not file one or respond to the Lincoln Defendants' statement.  So, the Court cites to Mr. Ferreira's two affidavits (ECF Nos. 41, 64) because they contain statements of his factual assertions and refer to specific exhibits in the summary judgment record.  The Court also cites the Lincoln Defendants' statement of undisputed facts, to which Mr. Ferreira did not respond or dispute.  ECF No. 63.

Once at the Marriot, Officers Anterni and Kinniburgh discovered Mr. Ferreira lying on the floor in the hallway. *Id.* ¶¶ 8, 10. After the scene was secured and cleared, an ambulance transported Mr. Ferreira to Rhode Island Hospital. *Id.* ¶¶ 11, 22. Thereafter, Officers Sexton, Rodrigues, and Legare and Detective Gorman arrived on the scene. *Id.* ¶ 19. The officers spoke with witnesses and collected evidence. *Id.* ¶¶ 22-25. While surveying the room, Detective Gorman saw two baggies on the desk, one empty and one containing a white powdery substance. *Id.* ¶ 25. When Officer Sullivan arrived on scene, he informed Detective Gorman that the Rhode Island State Police were coming and would take charge of the scene, which they did. *Id.* ¶¶ 26, 28. At no point during the response to the scene did Officers Packer, Ptaszek, Bolduc, or Nightingale participate. *Id.* ¶¶ 38-39. After the incident, Officer Nightingale possibly handled court related paperwork. *Id.* ¶ 41.

Mr. Harper and Ms. Silva were transported to the police station for interviews. *Id.* ¶¶ 31-32. The Rhode Island State Police field tested the white substance in the baggie and determined that it was heroin. *Id.* ¶¶ 36, 37. Both Mr. Ferreira and Ms. Silva were charged with possession of a controlled substance. *Id.* ¶ 37. The Lincoln Defendants maintain they did not seize Mr. Ferreira's SUV or money and the Rhode Island State Police handled the seizure—evidenced by the incident report. ECF No. 41-1 at 1-13.

Mr. Ferreira asserts that the Rhode Island State Police and Lincoln Police Department seized his Mercedes SUV and all its contents, including his personal effects and sixty-seven thousand dollars in cash ($67,000.00). ECF No. 41 ¶¶ 14, 15.

3

After the heroin charges were dismissed, Mr. Ferreira retrieved his Mercedes SUV from the vehicle impound lot and discovered that his personal effects and $67,000.00 were missing. *Id.* He did not receive a receipt or any other documentation acknowledging these missing items. ECF No. 64 ¶¶ 9-10.

Mr. Ferreira had a conversation with Detective Gorman at some point between March 1, 2019 to April 31, 2019, who told him, "the State Police took your money." ECF No. 41 ¶ 11. Lincoln Police did not provide Mr. Ferreira any additional information about his money and denied it had his possessions, so Mr. Ferreira initiated this action. ECF No. 64 ¶ 8-10. Through discovery in this case, he received inventory records from the Rhode Island State Police revealing that twenty-five thousand nine hundred and ninety-seven dollars and thirty-nine cents ($25,997.39) was recovered from his car and/or hotel room. *Id.* ¶¶ 12-13. The Rhode Island State Police returned roughly twenty-five thousand nine hundred ninety-six dollars ($25,996.00) to him. ECF No. 41 ¶ 18. Mr. Ferreira maintains that he had $67,000.00, and demands return of the forty-one thousand two dollars and sixty-one cents ($41,002.61) balance. ECF No. 41 at 2. He seeks the remaining amount as his relief in this suit. *Id.* ¶ 20.

Mr. Ferreira filed a complaint against the Lincoln Defendants. ECF No. 1. He amended his complaint once (ECF No. 13), then again (ECF No. 46) and the instant motion for summary judgment implicates this June 2020 Amended Complaint.

4

## II.   STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Tr. of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

## III.   DISCUSSION

The Lincoln Defendants have moved for summary judgment on several grounds, both procedural and substantive. ECF No. 64. Considering the parties are dealing with a thrice amended complaint where named defendants have changed; it is important to review who remains and clear the decks of those who do not. So, first, the Court will do some housekeeping. Officers Packer, Nightingale, Bolduc, Ptaszek, Rodrigues, Anterni, Legare, Kinniburgh, and Sexton seek dismissal because Mr.

Ferreira did not include any allegations against those individuals in his June 2020 Amended Complaint.[4]  ECF No. 46.

Because "[a]n amended complaint supersedes the original complaint, [] facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003) (internal citations omitted).    Therefore, Mr. Ferreira's June 2020 Amended Complaint has voided his earlier complaints, and the absence of any allegations against the individual officers in this operative complaint requires their dismissal. The Court GRANTS the Lincoln Defendants' Motion for Summary Judgment as to Officers Packer, Nightingale, Bolduc, Ptaszek, Rodrigues, Anterni, Legare, Kinniburgh, and Sexton.

Now the Court has the Town, Police Department, Chief Sullivan, Captain Gould, and Detective Gorman before it to answer to Mr. Ferreira's claims and assert their defenses.  However, before the Court engages in a complete summary judgment analysis of Mr. Ferreira's claims, it is most expedient to consider the Lincoln Defendants' assertion of qualified immunity in defense of certain claims.

---

[4] The one paragraph in Mr. Ferreira's First Amended Complaint that mentions these Defendants was edited to remove them from the June 2020 Amended Complaint; that paragraph now only lists Officers Sullivan, Gould, and Gorman. *Compare* ECF No. 13 ¶ 10; ECF No. 46 ¶ 10. Additionally, Mr. Ferreira's affidavit in support of his motion to amend stated his intention was "to delete or add Defendants required for proper adjudication of action." ECF No. 45 at 2.

A.    Constitutional Claims

Mr. Ferreira's Claim #3 alleges the Lincoln Defendants violated the First, Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution when they took his possessions and refused to fully return them.

### 1. Qualified Immunity – Constitutional Claims against Individuals

The Supreme Court has set forth a two-part test to determine the applicability of qualified immunity, that is "(1) whether the facts alleged or shown by [Mr. Ferreira] make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the [Defendants'] alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 268-269 (1st Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

The analysis begins with the initial question "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." *Id.* Mr. Ferreira alleges that both the Rhode Island State Police and the Lincoln Defendants took his possessions and only returned a portion of his casino winnings. And while the claim makes out a violation of his constitutional rights, he has presented no evidence that any of the individual Lincoln officers ever had possession of his SUV or money let alone any evidence that they kept any portion of his money. To start, there is no evidence that any of Mr. Ferreira's possessions were seized when the Lincoln Defendants left the hotel. Neither the SUV nor the money is referenced in any of the police reports. The only officer that heard of a white Mercedes SUV was Officer

Sexton who saw a very nervous Gerron Harper walk over to a white Mercedes SUV, which he said was his own car, in the hotel parking lot.

In the face of a lack of evidence, Mr. Ferreira alleges that there had to have been a conspiracy between the law enforcement agencies to retain his monies, but there is no evidence of that either. These allegations, without evidence, fail in the face of the Lincoln Defendants' undisputed assertion that the officers working the crime scene turned the scene over to the Rhode Island State Police when they arrived. Moreover, Mr. Ferreira swears in his affidavit that the Rhode Island State Police seized his SUV and money. The police inventory records reveal that $25,997.39 was seized from Mr. Ferreira's car. ECF No. 41 ¶¶ 12-13. Mere allegations that somehow the Lincoln Defendants were involved despite there being no evidence of same do not suffice at the summary judgment stage. Mr. Ferreira has produced no evidence beyond his own speculation that any of the Lincoln Defendants took possession of his SUV and $67,000,00 therein so he cannot meet the first hurdle in defending against qualified immunity.

Accordingly, the individual Lincoln Defendants are entitled to qualified immunity. The constitutional claims against them are DISMISSED.

### 2. *Monell* claim against the Town of Lincoln and Police Department

The Court now turns to Mr. Ferreira's constitutional claims under *Monell v. Department of Social Services* against the Town and Police Department. 436 U.S. 658, 694 (1978). "Municipalities cannot assert qualified immunity." *Wilson v. City of Boston*, 421 F.3d 45, 59 (1st Cir. 2005) (citing *Owen v. City of Independence*, 445

U.S. 622, 650 (1980). Therefore, the Court must analyze Mr. Ferreira's claim against the Town and Police Department in the context of the well-established law of municipal liability.

"[A] municipality may be liable under § 1983 where a custom or practice is so 'well-settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice.'" *Bisbal-Ramos v. City of Mayaguez*, 467 F.3d 16, 23-24 (1st Cir. 2006) (quoting *Silva v. Worden*, 130 F.3d 26, 31 (1st Cir. 1997)); *see also Monell*, 436 U.S. at 694; *Walden v. City of Providence*, 596 F.3d 38, 57-58 (1st Cir. 2010). The policy or custom must be the "cause and moving force behind the deprivation of constitutional rights." *Bisbal–Ramos*, 467 F.3d at 24.

After reviewing the summary judgment record in this case, Mr. Ferreira has failed to show that the Town or Police Department established a well-settled and widespread policy or custom that led to Mr. Ferreira's property seizure and/or retention. The Complaint alleges misconduct by individual officers and conspiracies, harkening to liability under a *respondeat superior* theory, but the developed record fails to reveal any disputed facts that would prove this misconduct or to attribute any of it to the Town or Police Department. *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013). Because a municipality or department cannot be held liable under a *respondeat superior* theory, *Monell*, 436 U.S. at 691, and Mr. Ferreira has failed to present to the Court any disputed material issues of fact on whether a Town or Police Department policy or custom caused his injuries, his constitutional claims against

these entities fails. Therefore, the Court GRANTS the Town's and Police Department's Motion for Summary Judgment on the *Monell* claims.

### 3. Qualified Immunity – State Law Claims

Mr. Ferreira's Claim #2 alleges that the Lincoln Defendants negligently interfered with his finances by taking and refusing to return his $67,000.00, which he could have invested. Mr. Ferreira also alleges in Claims #4 and #5 that the Lincoln Defendants converted his possessions in violation of state common law. These claims allege the same conduct as his constitutional claims–the taking and retention of his possessions, and where a state actor is entitled to qualified immunity under federal law, he or she is also immune from the same claim under Rhode Island law. *Hatch v. Town of Middletown*, 311 F.3d 83, 89-90 (1st Cir. 2002) (a qualified immunity defense under state law is analogous to immunity under federal law); *see also Ensey v. Culhane*, 727 A.2d 687, 690 (R.I. 1999). This applies not only to the Lincoln Defendants, but also to the Town and Police Department. *See Morales v. Town of Johnston*, 895 A.2d 721, 728-29 (R.I. 2006) (where high school soccer coaches have statutory immunity from suit, school district cannot be held liable based upon same conduct); *see also Gray v. Derderian*, 400 F. Supp. 2d 415, 424 (D.R.I. 2005) (no "liability can be charged to the [municipality], based on the doctrine of respondeat superior, if the [municipality's] agent or employee is immune from prosecution"). Therefore, the Lincoln Defendants have qualified immunity on the state law claims and their motion for summary judgment is GRANTED.

### B.   Federal and State Statutory Claims for Forfeiture

Mr. Ferreira asserts violations of a state statute, R.I. Gen. Laws § 21-28-5.04.1, and two federal statutes, 21 U.S.C. §§ 853(a) and 881(d), and 19 U.S.C. § 1615, relating to asset forfeiture procedures. These claims cannot be brought under these circumstances. First, Mr. Ferreira's claim under the federal statutes fail because the Lincoln Defendants are not federal actors. Second, R.I. Gen. Laws § 21-28-5.04.1 provides procedures for criminal forfeiture; it does not provide for a private cause of action by its terms. *Tarzia v. State*, 44 A.3d 1245, 1258 (R.I. 2012) (where a statute does not provide for a private cause of action, none can be implied). So, Mr. Ferreira's claims for damages under this statute fails.

Moreover, as previously noted, there is no evidence that the Lincoln Defendants seized Mr. Ferreira's property. The only evidence is that the Lincoln Defendants turned the scene and investigation over to the Rhode Island State Police before the Mercedes SUV and money therein was taken and it was the Rhode Island State Police, not the Lincoln Defendants who returned a portion of his money. Any allegation that the Lincoln Defendants did not adhere to forfeiture procedures fails in the face of the undisputed fact that it was the Rhode Island State Police who impounded Mr. Ferreira's SUV and its contents. Therefore, the Court GRANTS the Lincoln Defendants' Motion for Summary Judgment for claims under the federal and state forfeiture statutes.

IV.   CONCLUSION

For all the aforementioned reasons, the Court GRANTS the Lincoln Defendants' Motion for Summary Judgment. ECF No. 64.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

November 20, 2020