## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

**RICHARD FERREIRA,**
    *Plaintiff*

**v.**

**TOWN OF LINCOLN; ET AL.,**
    *Defendants*

C.A. No. 19-cv-00200-JJM-PAS

## STATE DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

1. On April 29, 2016, Sergeant Scot Baruti[1] ("Defendant Sgt. Baruti"), Lieutenant John Grassel ("Defendant Lt. Grassel"), and Sergeant Kenneth Demarco ("Defendant Sgt. Demarco") of the Rhode Island State Police ("RISP") responded to a request from the Lincoln Police Department ("LPD") to assist with an investigation of a shooting at the Marriot Hotel in Lincoln, Rhode Island. See Exhibit A.

2. Richard Ferreira ("Ferreira"), Gerron Harper ("Harper"), and Isabela Silva ("Silva") were involved in the shooting at the Marriot Hotel. See Exhibit A.

**The Hampton Inn (Westport, Massachusetts):**

3. On April 28, 2016, Ferreira convinced Clifton Jefferson ("Jefferson") to register a hotel room at the Hampton Inn in Westport, Massachusetts under Jefferson's name. See Exhibit B at 1-2.

4. Jefferson is an associate of Ferreira's who "prostituted [herself] for money" under the alias "Rihanna". See Exhibit B at 1.

5. Ferreira wanted the Hampton Inn hotel room registered under Jefferson's name so Ferreira

---

[1] At the time he conducted the investigation, Sgt. Baruti held the rank of corporal. Subsequently, he was promoted. Out of respect, Sgt. Baruti will be referred to at his current rank.

could avoid detection. See Exhibit B 1-2.

6.  Ferreira had several active warrants at the time in Massachusetts and Rhode Island for failure to appear, driving with a suspended license, eluding police, and possession of a controlled substance. See Exhibit B; Exhibit C; see also State of Rhode Island v. Ferreira, C.A. No. 21-2012-00301 (R.I. 2nd Div. Dist. Ct. Oct. 30, 2017); Commonwealth of Massachusetts v. Ferreira, C.A. No. 1432CR005444 (Fall River Dist. Ct. Sep. 15, 2014); Commonwealth of Massachusetts v. Ferreira, C.A. No. 1532CR005233 (Fall River Dist. Ct. Sep. 30, 2015); Commonwealth of Massachusetts v. Ferreira, C.A. No. 1632cr001577 (Fall River Dist. Ct. Mar. 11, 2016).

7.  Ferreira was known to law enforcement for his criminal history of violent crimes and narcotics trafficking, including assault with a deadly weapon, armed assault, breaking and entering, distribution of narcotics, possession with intent to distribute fentanyl, and assault and battery. See Exhibit A; Exhibit D.

8.  Ferreira and Silva arrived at the Hampton Inn in Westport, Massachusetts at approximately 9:45 AM, and checked into a room, with the intention of spending the night and traveling to South Carolina the next day in a 2005 Mercedes Benz ML350 SUV (the "Mercedes SUV"). See Exhibit B at 2; Exhibit A.

9.  Shortly after arriving at the Hampton Inn hotel room, Silva observed a photograph of Jefferson on Ferreira's phone, depicting Jefferson holding and posing with the cash that Ferreira had been carrying. See Exhibit B at 2.

10. Between 11:00 AM and 1:00 PM, Jefferson became engaged in a telephone conversation with Harper. See Exhibit B at 2.

11. Jefferson passed the phone to Ferreira, so that Ferreira could speak with Harper. See Exhibit

B at 2.

12. Ferreira invited Harper to the Hampton Inn Hotel room. See Exhibit B at 2.

13. Very shortly after speaking to Jefferson and Ferreira on the phone, Harper arrived at the Hampton Inn hotel room with another unidentified individual. See Exhibit B at 2.

14. Shortly after Harper arrived, Ferreira invited Harper to stay the night and travel to South Carolina with him and Silva. See Exhibit B at 2.

15. Harper and the unidentified individual stayed for approximately twenty (20) minutes before leaving. See Exhibit B at 2.

16. Jefferson left the Hampton Inn hotel room shortly after Harper and the individual. See Exhibit B at 2.

17. Jefferson was carrying one of the room keys when he left. See Exhibit B at 2.

18. Harper returned to the Hampton Inn hotel room in the evening, without the unknown individual. See Exhibit B at 2.

19. Later that evening, between 7:00 PM and 9:00 PM, Silva became upset in the Hampton Inn hotel room after learning that Ferreira had invited Harper to travel with them to South Carolina. See Exhibit B at 2-3.

20. Silva believed that Harper knew about the money. See Exhibit B at 2-3.

21. Silva and Ferreira began arguing. See Exhibit B at 2-3.

22. Following the argument, Silva left the Hampton Inn hotel room and went outside to the parking lot to calm down and smoke a cigarette. See Exhibit B at 2-3.

23. While Silva was in the Hampton Inn parking lot, two black males wearing black sweatshirts and fake police badges approached her aggressively and pinned Silva against a nearby vehicle. See Exhibit B at 3; Exhibit E at 109:773-109:775.

24. The two men put handguns in Silva's face and demanded to know "[w]here is Richie (Ferreira)?" and "[w]here is the money?" See Exhibit B at 3.

25. Silva ran from the men and escaped inside the pool area of the Hampton Inn. See Exhibit B at 3.

26. When Silva saw the two men enter the Hampton Inn and begin to walk towards her, she began screaming for help, causing the two men to turn and retreat from the building. See Exhibit B at 3.

27. Silva returned to the Hampton Inn hotel room and told Ferreira about the two men. See Exhibit B at 3.

28. Harper tried, unsuccessfully, to convince Ferreira that Silva was lying. See Exhibit B at 3.

29. Ferreira decided to leave the Hampton Inn for their safety and stay at the Marriott in Lincoln, Rhode Island. See Exhibit B at 3.

30. Neither Ferreira nor Silva told anyone where they were going. See Exhibit B at 3.

**The Courtyard Marriot Hotel (Lincoln, Rhode Island):**

31. Ferreira, Silva, and Harper left the Hampton Inn during the late evening of April 28, 2016 and checked into the Marriot Hotel on April 29, 2016 at approximately 3:45 AM in the Mercedes SUV. See Exhibit B at 3.

32. Silva operated the Mercedes SUV and had possession of the key to the Mercedes SUV. See Exhibit E at 16:112-16:113.

33. Silva locked the Mercedes SUV when Ferreira, Silva, and Harper arrived at the Marriot. See Exhibit E at 91:623-92:625.

34. Ferreira, Silva, and Harper all checked into room #318 at the Marriot. See Exhibit B at 3; Exhibit F.

35. Silva kept the key to the locked Mercedes SUV in the Marriot hotel room. Exhibit E at 91:623-92:625, 113:803-113:804.

36. Harper asked Silva if she could retrieve a phone charger for Harper from the Mercedes SUV. See Exhibit G at 3.

37. Silva declined because she was afraid of leaving the Marriot hotel room. See Exhibit G at 3.

38. Ferreira fell asleep on the second bed, farthest from the Marriot hotel room door. See Exhibit B.

39. Harper laid down on the bed closest to door of the Marriot hotel room. See Exhibit B at 3.

40. Silva fell asleep in a lounge chair in the corner of the Marriot hotel room. See Exhibit B at 3.

41. Between 3:45 AM and 4:30 AM, Ferreira awoke to a knock at the door to the Marriot hotel room and got out of bed to answer the door. See Exhibit B.

42. Ferreira opened the Marriot hotel room door, and two men entered several feet into the hotel room. See Exhibit B at 3.

43. An argument between Ferreira and the two men ensued. See Exhibit B at 3.

44. Silva awoke to Ferreira screaming at the two men standing in the doorway. See Exhibit B at 3.

45. Silva recognized the two men in inside the Marriot hotel room as the same gunmen from the Hampton Inn parking lot. Exhibit B at 3.

46. It is unknown how the two men knew that Ferreira was located in room #318 at the Marriot.

47. Harper also awoke to the argument. See Exhibit H.

48. Ferreira punched the man closest to him and knocked the man to the ground. See Exhibit B at 3.

49. During the fight, one of the men drew a gun and shot Ferreira, who sustained gunshot wounds to the teeth and the left side of his torso and collapsed to the floor. See Exhibit B at 3-4.

50. Following the gunshots, the two men fled the hotel room without saying anything. See Exhibit B at 3-4.

51. Harper ran about the room yelled and stated "[t]hey got me." See Exhibit B at 4.

52. Ferreira exclaimed "I'm dying man!" See Exhibit H.

53. Harper observed a large amount of blood around Ferreira's head, face, and stomach area. See Exhibit H.

54. Silva realized Ferreira had been shot and was bleeding profusely. See Exhibit B at 4; Exhibit H.

55. Harper attempted to move Ferreira out of the Marriot hotel room and into the hallway. See Exhibit B at 3.

56. Silva used the Marriot hotel room phone to call the front desk for help and reported that Ferreira had been shot. See Exhibit B at 4.

57. Harper fled the Marriot hotel room with a cell phone and walked outside into the parking lot, where the Mercedes SUV was parked. See Exhibit B at 4.

58. Harper walked across the Marriot hotel parking lot towards a Sunoco gas station directly next to the hotel. See Exhibit B at 4.

59. Harper attempted to secure transportation at the Sunoco gas station, with the intent to flee the area. See Exhibit B at 4.

**Lincoln Police Respond to the Marriot Hotel:**

60. Hotel security contacted LPD and reported the shooting at approximately 4:30 AM on April 29, 2016. See Exhibit B at 4; Exhibit H.

61. LPD dispatched four (4) officers to the Marriot: LPD Officers Stephen Rodrigues ("Rodrigues"), Jonathon Sexton ("Sexton"), Joseph Anterni ("Anterni"), and Kyle Kinniburgh

("Kinniburgh"). <u>See</u> Exhibit H.

62. LPD dispatch notified the responding LPD Officers that a possible suspect had been seen leaving the Marriot and walked to the Sunoco gas station next door to the hotel. <u>See</u> Exhibit H.

63. Two of the LPD Officers, Anterni and Kinniburgh, observed Harper at the Sunoco gas station and placed Harper in handcuffs, believing he was a suspect connected to the shooting. <u>See</u> Exhibit A; Exhibit H.

64. Hotel security escorted Silva from outside the Hampton Inn hotel room, downstairs to the lobby to calm Silva down. <u>See</u> Exhibit B at 4.

65. While in the Hampton Inn lobby, Silva observed police lights emanating from the Sunoco Gas station. <u>See</u> Exhibit B at 4; Exhibit A.

66. Silva left Hampton Inn and traveled to the Sunoco gas station to get the attention of the responding LPD officers. <u>See</u> Exhibit B at 4; Exhibit A.

67. When Silva arrived at the Sunoco gas station, Silva told LPD Officers Anterni and Kinniburgh that Harper did not shoot Ferreira. <u>See</u> Exhibit B at 4; Exhibit A.

68. Silva also told LPD Officers Anterni and Kinniburgh and that the shooters were possibly still at the Marriot hotel. <u>See</u> Exhibit H at 4; Exhibit A.

69. LPD officers Anterni and Kinniburgh released Harper, who requested to enter the Mercedes SUV. <u>See</u> Exhibit A; Exhibit H.

70. LPD Officers Anterni and Kinniburgh denied Harper's request and directed Harper and Silva to follow them back to the Marriot hotel. <u>See</u> Exhibit H.

71. LPD Officers Anterni and Kinniburgh returned to the lobby of the Marriot hotel. <u>See</u> Exhibit H.

7

72. Harper and Silva returned to the lobby of the Marriot hotel after LPD Officers Anterni and Kinniburgh. See Exhibit H.

73. The front desk clerk at the Marriott directed LPD Officers Anterni and Kinniburgh to room #318. See Exhibit H.

74. LPD Officers Anterni and Kinniburgh instructed Harper and Silva to remain in the lobby. See Exhibit H.

75. LPD Officers Anterni and Kinniburgh went upstairs towards room #318 and discovered Ferreira laying in the hallway outside of room #318. See Exhibit B; Exhibit A.

76. LPD Officers Anterni and Kinniburgh then cleared and secured room #318. See Exhibit H.

77. While in the lobby of the Marriot hotel, Harper told Silva not to talk to the police unless Ferreira tells her otherwise. See Exhibit A.

78. LPD Officer Sexton arrived at the Marriot and observed Harper attempting leave the lobby towards the Marriot parking lot, despite Officers LPD Officers Anterni and Kinniburgh instructing Harper to remain in the lobby. See Exhibit H.

79. LPD Officer Sexton stopped Harper as Harper was leaving and asked Harper if he was involved in the incident. See Exhibit H.

80. Harper stated that he was going to his car, which he described as a "white Mercedes" parked to the right of the entrance to the Marriott, which is the same vehicle that had been used to transport Ferreira, Silva, and Harper from the Hampton Inn hotel to the Marriot hotel. See Exhibit H.

81. A VIN check later confirmed the "white Mercedes" described by Harper was the Mercedes SUV. See [FSU].

82. LPD Officer Sexton observed Harper walk out of the lobby and towards a row of cars, where

he stopped and began pacing. <u>See</u> Exhibit H.

83. LPD Officer Sexton continued into the hotel and upstairs towards room #318. <u>See</u> Exhibit H.

84. After reaching the third floor and seeing LPD Officers securing the scene, LPD Officer Sexton then returned to the Marriot lobby. <u>See</u> Exhibit H.

85. LPD Officer Sexton observed that Harper had returned to the hotel lobby. <u>See</u> Exhibit H.

86. Harper gave his personal information to LPD Officer Sexton but denied having a cell phone or contact number. <u>See</u> Exhibit H.

87. Harper then proceeded back to room #318 but was stopped by LPD Officers who were securing the scene and assisting Ferreira. <u>See</u> Exhibit H.

88. Harper told LPD Officers that he had a cell phone in the hotel room that he wanted to retrieve but was escorted back to the lobby after becoming agitated towards the LPD Officers. <u>See</u> Exhibit H.

89. LPD Officers began interviewing witnesses from the neighboring rooms. <u>See</u> Exhibit H.

90. Ferreira was subsequently transported by ambulance to Rhode Island Hospital, where he was treated for gunshot wounds. <u>See</u> Exhibit A; Exhibit H.

91. LPD Detective Gorman ("Det. Gorman") arrived on the scene at approximately 5:40 AM and began photographing and processing the crime scene. <u>See</u> Exhibit H.

92. At or about that time, LPD Chief of Police Brian Sullivan contacted RISP and requested assistance with processing the crime scene, securing evidence, and interviewing witnesses. <u>See</u> Exhibit B; Exhibit H.

**<u>Rhode Island State Police respond to the Marriot:</u>**

93. Several members of RISP were dispatched to assist LPD with the investigation, including Defendant Sgt. Baruti, Defendant Lt. Grassel, and Defendant Sgt. DeMarco. <u>See</u> Exhibit B at

1.

94. After responding to the Marriot, Defendant Sgt. Baruti was assigned to assist LPD with gathering evidence and securing surveillance footage. See Exhibit B at 1; Exhibit I.

95. Defendant Lt. Grassel, and Defendant Sgt. DeMarco were assigned to process and photograph the crime scene and canvass the surrounding area. See Exhibit A; Exhibit I; Exhibit B at 1.

96. Defendant Trooper Hirsch neither responded to the scene nor participated in any subsequent proceedings related to the incident. See Exhibit J.

97. Defendant Col. Manni was retired from 2015 to 2019 and neither responded to the scene nor participated in any subsequent proceedings related to the incident. See Exhibit B; see also Command Staff, Rhode Island State Police, accessible at:

https://risp.ri.gov/about/commandstaff.php.

98. RISP Colonel Ann C. Assumpico, who was the Superintendent of the RISP from 2016 to 2018, neither responded to the scene nor participated in any subsequent proceedings related to the incident. See Exhibit B; see also Assessment, Rhode Island State Police, accessible at:

https://risp.ri.gov/about/commandstaff.php.

99. While photographing and processing the Marriott hotel room, RISP Detectives recovered a package containing suspected narcotics, which later tested positive as heroin. See Exhibit J; Exhibit K at ¶ 3.

100. A search of Marriot hotel room produced assorted cash totaling ($3.00), which was counted and logged as Property #16RIX1-1316-PR, by RISP Detective Melissa Giardina and RISP Detective Amanda Brezniak ("Det. Brezniak") and verified by RISP Corporal Matthew McGuire on May 3, 2016. See Exhibit J.

101. RISP Detectives also recovered a purse from the Marriott hotel room, a subsequent search of

which produced $699.27 in assorted cash, which was logged as Property #16RIX1-1310-PR, by Defendant Sgt. Demarco and RISP Detective Melissa Giardina and verified by Defendant Lt. Grassel on May 2, 2016. <u>See</u> Exhibit J.

102.  RISP did not recover the key to the Mercedes SUV that Silva kept in the Marriot hotel. <u>See</u> Exhibit J; Exhibit F; Exhibit E at 91:623-92:625, 113:803-113:804.

103.  Security footage recovered by Defendant Sgt. Baruti revealed that Harper had discarded the cell phone that he was seen using at the Sunoco gas station next to the Marriot. <u>See</u> Exhibit A.

104.  Harper and Silva were taken into custody by LPD and transported to LPD Headquarters for a formal police interview. <u>See</u> Exhibit A.

105.  RISP Detectives Alboum ("Det. Alboum") and Palumbo ("Det. Palumbo") were assigned to respond to LPD Headquarters to assist LPD with interviewing Silva and Harper. <u>See</u> Exhibit B.

106.  Silva agreed to be interviewed and provided a statement at LPD Headquarters. <u>See</u> Exhibit B.

107.  LPD Lieutenant Kevin Marcoux ("LPD Lt. Marcoux") and RISP Detective Heather Donahue ("Det. Donahue") interviewed Silva on April 29, 2016. <u>See</u> Exhibit E.

108.  LPD. Lt. Marcoux questioned Silva if she knew where Ferreira kept the money while in the Marriot hotel room. Exhibit E at 67:444-67:446.

109.  Silva stated to LPD Lt. Marcoux that Ferreira "had the money on him[,]" while in the Marriot hotel room. <u>See</u> Exhibit E at 67:444-67:446.

110.  Silva told RISP Det. Donahue that Ferreira would not keep the money in the Mercedes SUV and that Ferreira would of hid it somewhere in the Marriot hotel room or kept it near him. <u>See</u> Exhibit G at 3.

111.  Silva estimated that the cash would have totaled approximately $17,000.00. <u>See</u> Exhibit E at

30:192-30:193.

112. Harper refused to answer any questions, including the whereabouts of the cell phone he had discarded after the shooting. See Exhibit A.

113. RISP Detectives believed the discarded cell phone may contain evidence related to the investigation. See Exhibit A.

114. RISP Det. Alboum and Palumbo were subsequently assigned to respond with LPD Detectives to the Westport, Massachusetts area to canvas the area and investigate the "alleged attempted robbery that had taken place involving the same parties on the evening prior" at the Hampton Inn hotel. See Exhibit B at 1.

**Search of the Mercedes SUV**

115. Defendant Sgt. Baruti learned that the Mercedes SUV was not registered to Ferreira, Silva, or Harper; it was registered to Charles Flint ("Flint"). See Exhibit A; Exhibit L.

116. RISP conducted criminal record checks on Ferreira, Harper, Silva, and Flint which revealed that all four individuals had been previously arrested for violent crimes and charged with drug distribution. See Exhibit A.

117. Knox's Garage and Towing towed the Mercedes SUV from the Courtyard Marriot to RISP headquarters, where RISP secured it and preserve any evidence while Defendant Sgt. Baruti applied for a search warrant to search the vehicle. See Exhibit J; Exhibit A.

118. Defendant Sgt. Baruti had probable cause to believe that Harper and/or Silva may have placed evidence related to the shooting inside the Mercedes SUV. See Exhibit J; Exhibit A.

119. Defendant Sgt. Baruti obtained a search warrant, issued by Chief Judge Jeanne E. LaFazia on April 29, 2016 at 3:50 PM, to search the Mercedes SUV, including the trunk, for "firearms, ammunition, clothing, cellular phones, multimedia devices, gunshot residue, biological

evidence, USA currency and receipts [and] any and all evidence pertaining to the attempted murder of Richard Ferreira…." See Exhibit A.

120. Det. Brezniak of the RISP Forensic Services Unit performed a detailed search of the Mercedes SUV at the RISP Forensic Services Unit vehicle inspection bay between April 29, 2016 and May 10, 2016. See Exhibit J.

121. A search of the glove box produced $23,040.00 in cash located within three layers of plastic bags inside of the glove box; the outermost layer was a black plastic bag; the second layer was a clear sealed Ziploc bag; the third, innermost layer consisted of a knotted white plastic Target bag. See Exhibit J.

122. The $23,040.00 recovered from the glove box was counted and logged as Property #16RIX1-1292-PR, by RISP Detective Kyle Shibley ("Det. Shibley") and Defendant Sgt. Baruti on April 29, 2016. See Exhibit J.

123. A search of the Mercedes SUV also produced a Massachusetts Driver's license for Charles Flint. See Exhibit J; Exhibit F.

124. On May 2, 2016, RISP Det. Shibley deposited the cash seized from the glove box of the Mercedes SUV at a local Bank of America. (Property #16RIX1-1292-PR). See Exhibit J.

125. After handing the seized cash to a Bank of America employee, Det. Shibley was advised that Bank of America's cash counting machine indicated a total amount of $22,970.00, which did not include a counterfeit $20 bill that was located within the assorted cash. Exhibit J.

126. After speaking with the bank manager and alerting Defendant Sgt. Baruti about the $50 discrepancy, plus the counterfeit $20 bill, totaling $70, Det. Shibley made a total deposit of $22,970.00. See Exhibit J.

127. The counterfeit $20 bill was seized and returned to RISP headquarters and logged as Property

#16RIX1-1306-PR. See Exhibit J.

128. A subsequent search of the general interior of the Mercedes SUV produced assorted cash totaling $25.00, which was counted and logged as Property #16RIX1-1300-PR by Det. Brezniak and Det. Shawn Slade and verified by Defendant Lt. Grassel on May 2, 2016. See Exhibit J.

129. A search of a purse located in the trunk of the Mercedes SUV produced assorted cash totaling $2,210.00, which was counted and logged as Property #16RIX1-1307-PR by Det. Brezniak and Det. Shawn Slade and verified by Defendant Lt. Grassel on May 2, 2016. See Exhibit J.

130. On May 3, Det. Shibley returned to Bank of America and made four (4) additional deposits of seized cash totaling $2,937.27, which consisted of $25.00 recovered from the SUV interior (Property #16RIX1-1300-PR); $2,210.00 recovered from a purse in the trunk of the SUV (Property #16RIX1-1307-PR); $699.27 recovered from a purse found in the Marriot hotel room (Property #16RIX1-1310-PR); and, $3.00 recovered from the Marriot hotel room (Property #16RIX1-1316-PR). See Exhibit J.

131. The total amount of assorted cash seized in connection with the investigation of the shooting was $25,907.27. See Exhibit J; Exhibit M.

**2016 Arrests and Seizures:**

132. LPD charged Harper with felony possession of a controlled substance (R.I. Gen. Laws § 21-28-4.01(c)(2)(i)) on May 2, 2016, in connection with the heroin recovered from the Marriot hotel room after the shooting. See State of Rhode Island v. Harper, C.A. No. 32-2016-04332 (R.I. 6th Div. Dist. Ct. May 2, 2016).

133. LPD charged Ferreira with felony possession of a controlled substance (R.I. Gen. Laws § 21-28-4.01(c)(2)(i)) on May 5, 2016, in connection with the heroin recovered from the Marriot

hotel room after the shooting. See State of Rhode Island v. Ferreira, C.A. No. 32-2016-04547 (R.I. 6th Div. Dist. Ct. May 2, 2016).

134. On August 5, 2016, RISP released the Mercedes SUV to Flint, the registered owner. See Exhibit L.

135. On August 22, 2016, LPD suspended the investigation of the shooting, because Ferreira refused to cooperate. See Exhibit B at 4.

136. A few months later, in November 2016, Ferreira was arrested in Massachusetts for drug-trafficking offenses that were not connected to the shooting at the Marriot, but that did involve a large cash seizure by police. See Exhibit C.

137. On November 5, 2016, Fall River Police executed a warrant and arrested Ferreira and Silva at an apartment in Fall River. See Exhibit C.

138. During the arrest, Fall River Police observed drug paraphernalia and secured a search warrant for the apartment. See Exhibit C.

139. The search of the Fall River apartment produced a digital scale, numerous prescription pills, a "drug ledger" containing notes that documented an illegal drug trafficking operation, and cash totaling $35,084.00. See Exhibit C.

140. Fall River Police seized the $35,084.00 and applied to the Bristol County District Attorney to commence a forfeiture proceeding. See Exhibit C.

141. On December 5, 2016, the Bristol County District Attorney filed a complaint for forfeiture of the $35,084.00 on behalf of the Commonwealth of Massachusetts. See Exhibit C.

142. On December 8, 2016, Ferreira was indicted on multiple felony drug charges, including possession of a controlled substance with the intent to distribute narcotics. See Commonwealth of Massachusetts v. Ferreira, C.A. No. 1673CR00427 (Bristol Cty. Super. Ct. Dec. 8, 2016).

143. On December 11, 2016, the Massachusetts Superior Court entered an Order, forfeiting the $35,084.00 to the Commonwealth of Massachusetts. See Exhibit C.

144. To date, forfeiture proceedings have not commenced against the $25,727.27 seized by RISP. See Exhibit M.

145. The cash seized by RISP and Fall River Police in 2016 in connection with both of Plaintiffs' 2016 drug-related arrests totals $60,811.27. See Exhibit J; Exhibit C.

146. The LPD charges against Ferreira were dismissed on April 19, 2017. See Lincoln Police Department ex rel State of Rhode Island v. Ferreira, C.A. No. 32-2016-04547 (R.I. Dist. Ct. May 2, 2016).

147. On or about October 29, 2017, while the Massachusetts indictment was pending, Tiverton Police arrested Ferreira for several traffic-related offenses and seized $27,156.00 from Ferreira, incident to the arrest. See State of Rhode Island v. Ferreira, C.A. Nos. 211702506, 21120301, 211702502, 211702505 (R.I. Dist. Ct. Oct. 30, 2017).

148. On October 30, 2017 Tiverton Police and Portsmouth Police charged Ferreira with leaving the scene of an accident resulting in property damage, driving on a suspended license (third offense), reckless driving, and attempting to elude police. See State of Rhode Island v. Ferreira, C.A. Nos. 211702506, 21120301, 211702502, 211702505 (R.I. Dist. Ct. Oct. 30, 2017).

149. Ferreira was also charged as a fugitive from justice and held without bail at the ACI, because a warrant issued by Massachusetts concerning the 2017 narcotics distribution case against Ferreira. See State of Rhode Island v. Ferreira, C.A. No. 221702508 (R.I. Dist. Ct. Oct. 30, 2017).

150. Ferreira pled nolo contendere to several of the charges on November 7, 2017.

151. Ferreira was subsequently transferred from the ACI to the Massachusetts Department of

Corrections. <u>See</u> <u>Commonwealth of Massachusetts v. Ferreira</u>, C.A. No. 1673CR00427 (Bristol Cty. Super. Ct. Dec. 8, 2016).

152. Ferreira pled guilty to possession of a controlled substance with the intent to distribute narcotics and was sentenced to four (4) years in prison, with two (2) years to serve at the Bristol County House of Corrections. <u>See</u> <u>Commonwealth of Massachusetts v. Ferreira</u>, C.A. No. 1673CR00427 (Bristol Cty. Super. Ct. Dec. 8, 2016).

153. In October 2019, during the pendency of this litigation, the State of Rhode Island charged Ferreira with numerous narcotics-related crimes, including manufacturing and trafficking fentanyl into the ACI. <u>See</u> <u>State of Rhode Island v. Ferreira</u>, C.A. P2-2019-5360A (R.I. Super. Ct. 2019); <u>see also</u> Exhibit D.

154. Ferreira has been charged as a habitual offender, pursuant to R.I. Gen. Laws § 12-19-21. <u>See</u> Exhibit D.

155. The 2019 criminal charges allege that on October 29, 2017, prior to his arrival at the ACI, Ferreira hid a large amount of fentanyl in his rectum to traffic inside the ACI. <u>See</u> <u>State of Rhode Island v. Ferreira</u>, C.A. P2-2019-5360A (R.I. Super. Ct. 2019).

156. It is further alleged in the 2019 criminal charges that once Ferreira was inside the ACI, he removed the fentanyl, repackaged it, and began selling quantities of the narcotic to other inmates in exchange for commissary items, which resulted in the near death of another inmate. <u>See</u> <u>State of Rhode Island v. Ferreira</u>, C.A. P2-2019-5360A (R.I. Super. Ct. 2019); Exhibit D.

**<u>The Complaint:</u>**

157. On April 22, 2019, Ferreira filed the instant civil lawsuit against LPD and RISP, while serving a criminal sentence in Massachusetts for a drug trafficking-related offense. <u>See</u> Exhibit K.

158. In October 2019, during the pendency of this litigation, the State of Rhode Island charged

Ferreira with numerous narcotics-related crimes, including manufacturing and trafficking fentanyl into the ACI. See <u>State of Rhode Island v. Ferreira</u>, C.A. P2-2019-5360A (R.I. Super. Ct. 2019); <u>see also</u> Exhibit D.

159. During the pendency of this litigation, Ferreira was extradited from Massachusetts to Rhode Island and posted bail in October 2020. <u>See</u> <u>State of Rhode Island v. Ferreira</u>, C.A. P2-2019-5360A (R.I. Super. Ct. 2019).

160. On June 4, 2020, Ferreira filed a Second Amended Complaint (Exhibit K) (the "Complaint"). <u>See</u> Exhibit K. The Complaint contains the following allegations:

   a. That "$67,000.00 was taken by [State Defendants] on April 29, 2016" from inside the Mercedes SUV. <u>See</u> Exhibit K at ¶ 1;

   b. Defendant Col. Manni "failed/refused to train, supervise, and/or create policy or suggest policy changes in relation the seizure of vehicles, which should have included … return of the $67,000.00…." <u>See</u> Exhibit K at ¶ 12.

   c. Defendants Lt. Grassel, Sgt. Baruti, and Trooper Hirsch seized, converted, and stole $67,000.00 and "other personal effects of [Ferreira's]" from the Mercedes SUV. <u>See</u> Exhibit K n ¶ 13.

   d. Defendants Lt. Grassel, Sgt. Baruti, and Trooper Hirsch were "so poorly trained, funded, supervised in RISP policy/rules/regulations that these [Defendants] then located $25,996.00 (from the $67,000.00), and refused to return it to [Ferreira]." <u>See</u> Exhibit K at ¶ 13(C).

161. The Complaint asserts the following legal claims:

   a. "Legal Claim #1" asserts that the "seizure/conversion/theft of the $67,000.00" … created a Tort of Negligence Action…" and also violated R.I. Gen. Laws § 21-28-

5.04.1 and 21 U.S.C. §§ 853(a) and 881(d) and 19 U.S.C. § 1615. <u>See</u> Exhibit K at ¶¶ 1, 72-73.

 b. The Complaint alleges in "Legal Claim #2" that State Defendant's "acts and omissions … created a Tort of Negligence Action-Claim of Financial Interference…." <u>See</u> Exhibit K at ¶¶ 74-75.

 c. The Complaint alleges in "Legal Claim #3" that State Defendant's "acts and omissions" violated Ferreira's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution. <u>See</u> Exhibit K at ¶¶ 32, 76-77.

 d. The Complaint alleges in "Legal Claim #4" that State Defendant's "acts and omissions … created a Willful and Malicious Tort Of [*sic*] Conversion…." <u>See</u> Exhibit K at ¶¶ 78-79.

 e. The Complaint alleges in "Legal Claim #5" that State Defendant's "acts and omissions … created a [*sic*] Innocent, Technical, Reckless Tort Of [*sic*] Conversion…." <u>See</u> Exhibit K at ¶¶ 78-79.

162. The Complaint seeks return of unspecified "personal effects" and damages consisting of: $67,000.00, with interest, $25,996.00, and between $10,000.00 and $5 million. <u>See</u> Exhibit K at ¶¶ 83-85.

163. Annexed to the Complaint is a letter dated May 1, 2019 from Attorney John Cicilline to Ferreira that states: "In order to file a Motion for Return of Evidence, I will need the documentation you (Ferreira) have showing that [t]he State Police are in possession of your seized $67,000." <u>See</u> Exhibit K at p. 49.

164. On April 14, 2020, Ferreira filed a self-titled document with the Court admitting $25,907.27 "was taken by legal warrant it would appear…." <u>See</u> Exhibit N at ¶ 3.

165. Ferreira's also alleges that "Plaintiff had the total sum of $67,000.00, which cannot now, be found, nor accounted for by the Defendants." <u>See</u> Exhibit N at ¶ 15.

166. Ferreira claims that RISP "stole the money" and "lied about having it altogether". <u>See</u> Exhibit N at ¶ 19.

167. On July 14, 2020, Ferreira sent a letter to this Court, containing a self-titled document that accused Assistant Attorney General Chrisanne Wyrzykowski of engaging in a conspiracy with RISP to "cover up" the alleged theft of $67,000.00 by "deliberately engineering the filing of the criminal case in 2019…" to "coerce, threaten, and intimidate" Ferreira into dismissing the instant lawsuit. <u>See</u> Exhibit O; Exhibit D; <u>see also</u> <u>State of Rhode Island v. Ferreira</u>, C.A. P2-2019-5360A (R.I. Super. Ct. 2019);.

Respectfully Submitted,

RHODE ISLAND STATE POLICE; COLONEL JAMES MANNI, in his individual capacity and official capacity as Superintendent of the Rhode Island State Police; DETECTIVE LIEUTENANT JOHN GRASSEL; DETECTIVE SERGEANT KENNETH DEMARCO; SERGEANT SCOT BARUTI; and, TROOPER KATHERYN HIRSCH, in their individual and official capacities, By:

PETER F. NERONHA ATTORNEY GENERAL

*/s/ Justin J. Sullivan*

Justin J. Sullivan (#9770)
Special Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
150 South Main St. Providence, RI 02903
Tel: (401) 274-4400 | Ext. 2007
Fax: (401) 222-2995
jjsullivan@riag.ri.gov

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF system to the following attorneys of record on Friday, January 29, 2021:

Marc DeSisto, Esq.
marc@desistolaw.com

Patrick K. Burns, Esq.
pburns@desistolaw.com

*/s/ Ellen Ullucci*

I, hereby further certify, that I mailed a copy of the foregoing document by first class mail, postage prepaid on Friday, January 29, 2021 to:

Richard Ferreira,
*Pro Se - Incarcerated*
45 Dover Street
Fall River, MA 02721
774-379-3621

*/s/ Justin J. Sullivan*